HOWARD HUGGINS, Plaintiff-Appellant, *v.* CENTRAL NATIONAL BANK OF MATTOON, Defendant-Appellee.

Fourth District   No. 4—84—0073

Opinion filed September 14, 1984.

Raymond Lee, Jr., of Lee & Lee, Ltd., of Tuscola, and William A. Sunderman, of Brainard, Bower & Kramer, of Charleston, for appellant.

Kenneth L. Bast, of Kidwell, Cummins & Bast, of Mattoon, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On April 12, 1979, plaintiff, Howard Huggins, brought suit in the circuit court of Coles County against defendant, Central National Bank of Mattoon, seeking damages arising from the sale by defendant of certain shares of corporate stock pledged by plaintiff to secure his indebtedness to defendant. Eventually an amended three-count complaint was filed. Count I sought an accounting by defendant for the proceeds of the sale of the securities. Counts II and III, respectively, alleged conversions by defendant of (1) the shares originally pledged, and (2) the shares issued as a stock dividend on the original shares. On August 10, 1982, the court granted summary judgment for defendant as to counts II and III. On December 28, 1983, after an evidentiary hearing on count I, the court found that the plaintiff was entitled to $49.14 and entered judgment accordingly. Plaintiff has appealed.

At the time of the ruling on the motion for summary judgment, plaintiff had admitted: (1) on October 18, 1978, he borrowed $56,500 from defendant and executed and delivered to defendant his note in that principal sum due January 16, 1979; (2) to secure the same he pledged 12,298 shares of the capital stock of Standard Metals Corporation; (3) at the time of the execution of the $56,500 note, plaintiff had other outstanding indebtedness to defendant as evidenced by a

$27,000 note due on November 30, 1978, a $4,000 note due on October 28, 1978, and a $3,000 note due on December 15, 1978; (4) the terms of the $56,500 note provided that the stock pledged to secure it might be sold not only upon default on that note, but also upon default on the other indebtedness of plaintiff to defendant; and (5) the original shares of Standard Metals Corporation were sold by defendant on December 28, 1978, and all of the shares were sold after the due dates of the various other notes and at a time when plaintiff was not current on those notes.

In opposition to the summary judgment motion, plaintiff stated in an affidavit that (1) he had engaged in various conversations with defendant's president and discussed the $27,000, $4,000, and $3,000 notes during the month of December 1978 and in prior months, (2) during the course of the conversations, he informed the president that he would "pay all obligations due on or before January 20, 1979," (3) "accordingly the said notes [above described] were not renewed and no payment was made by him thereon *** it being understood that he would make payment in full as per such agreement," and (4) the president did not insist upon or demand payment before December 28, 1978. Plaintiff contends that by this affidavit, he set forth matters giving rise to a factual dispute as to whether the president's promise estopped defendant from selling the pledged shares.

In order for a party to be entitled to a summary judgment, the record presented must show that no factual issue need be proved to entitle that party to a judgment. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) Put another way, the rule is that to be entitled to a summary judgment, the evidence before the court must be such that if it were presented at trial, the party seeking summary judgment would be entitled to judgment as a matter of law. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) Plaintiff maintains that a question of fact exists in this case as to whether defendant was estopped from selling plaintiff's shares based upon his default on the smaller notes when defendant had impliedly promised plaintiff that it would extend the maturity date of such notes. Such a promise for extension would not require consideration to be binding if defendant's reliance on the promise worked an estoppel. The doctrine involved is one sometimes loosely referred to as promissory estoppel.

Plaintiff relies primarily upon *Bank Computer Network Corp. v. Continental Illinois National Bank & Trust Co.* (1982), 110 Ill. App. 3d 492, 442 N.E.2d 586. There, a suit was filed claiming that the bank held two of plaintiff's notes which had been renegotiated and ex-

tended previously. The parties were in the midst of negotiations for further extensions when the extended due dates passed. Despite the maturity of the notes, the parties continued to negotiate, and the bank made no demand. On the day before the bank's final action, it advised the plaintiff of overdrafts in its checking account. Plaintiff represented that payments were in the mail, and the bank officer responded "fine." On the next day, the bank demanded immediate payment of the obligations and offset plaintiff's checking account, which had been replenished by the payments which were in the mail on the previous day. A summary judgment for the bank was reversed on appeal.

■ The basic principle of the doctrine of promissory estoppel is that consideration need not be furnished for a promise to render it enforceable if the promisor should reasonably expect the promise to produce action or forbearance of a substantial character on the part of the promisee, the promise does produce that result, and injustice can be avoided only by enforcement of the promise. (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138.) In *Bank Computer Network Corp.*, the court stated that although no bank officer was shown to have expressly promised to refrain from offsetting the checking account to apply on the overdue notes, "the promise essential to a claim of promissory estoppel need not be expressed, only unambiguous." 110 Ill. App. 3d 492, 497, 442 N.E.2d 586, 590-91.

Here, as in *Bank Computer*, there had been conversations concerning the debt. Here, unlike there, no indication was given that the bank had made any offers. Plaintiff's affidavit stated he would make all payments by January 20, 1979, and then stated, "it being understood that he [plaintiff] would make payment in full as per such agreement." The language of the affidavit makes no statement that the bank agreed to anything and is thus ambiguous as to what is meant by "such agreement." In *Bank Computer*, a bank officer was stated to have replied affirmatively to the plaintiff's assurance that funds to restore the plaintiff's checking account were in the mail. No similar affirmative conduct is attributed to defendant's president here. The failure to demand immediate payment when plaintiff said he would pay at a later date is not the type of conduct that could reasonably be expected to induce a debtor to rely on his security not being sold.

■ If defendant's president told plaintiff that he could have an extension on his loans, plaintiff should have so stated in his affidavit. If defendant's president did not so state, the circumstances revealed here do not give rise to a factual question as to whether a promissory

estoppel existed.

Because plaintiff's theory of promissory estoppel fails, we need not discuss defendant's contention that plaintiff would also be prevented from bringing an action for conversion because he was not entitled to the possession of the shares at the time the alleged conversion took place. The trial court properly granted summary judgment on counts II and III.

Plaintiff presents no arguments which indicate that the accounting made pursuant to count I was erroneous. Accordingly, we find no error to have occurred as to that count.

On the first day of trial, plaintiff moved to amend his complaint by reinstating counts II and III. The court properly denied reinstatement. The issues contained in those counts had been decided by the summary judgment previously entered. Before allowing such a motion, the summary judgment would have to have been vacated. No such request was made and, as we have indicated, no error resulted from the entry of the summary judgments.

Accordingly, the judgments of the trial court are affirmed.

Affirmed.

MILLER and WEBBER, JJ., concur.