The COCA–COLA COMPANY FOODS DIVISION, a Delaware corporation, Plaintiff,

v.

OLMARC PACKAGING COMPANY, an Illinois corporation, Defendant.

OLMARC PACKAGING COMPANY, an Illinois corporation, Counterplaintiff,

v.

The COCA–COLA COMPANY FOODS DIVISION, a Delaware corporation, Counterdefendants.

No. 84 C 5746.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1985.

Michael W. Coffield, Kevin M. Flynn, Michael T. Trucco, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff.

Steven J. Rosenberg, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Plaintiff, Coca-Cola Foods ("FOODS") sued Defendant, Olmarc Packaging Company ("OLMARC") for breach of contract. Foods filed a single count complaint. Olmarc answered and pleaded two affirmative defenses, along with two counterclaims. Foods' motion to strike the affirmative defenses and dismiss the counterclaims is the subject matter of this Order. For the following reasons, Foods' motion is granted in part and denied in part.

In early 1977 Foods and Olmarc entered into a Packing Agreement ("AGREEMENT"). Essentially Olmarc agreed to mix, package, store and ship dry powdered drink bases received from Foods in return for payment from Foods in accord with a set "Fee Schedule." The Agreement required Foods to furnish Olmarc with instructions and specifications for Olmarc's performance.

In addition to Olmarc's packaging and shipping obligations under the contract, Paragraph 8 required payments for certain losses and shortages of materials provided by Foods. Paragraph 8 states

> [Olmarc] shall ... be responsible for all packing supplies and all other property of [Foods] in its (Olmarc's) care, custody or control and shall be responsible to and ... reimburse [Foods] for any unauthorized usage or any unaccounted for or

unauthorized losses or shortage of ... packing materials, finished products and property or for damages [to them], regardless of the cause ... [for such] shortage or damage. At the end of each month or such other manufacturing period as may be established by [Foods] ... [Foods] will furnish ... [Olmarc] a schedule showing the authorized usage of ... supplies based upon the quantity of powders packed and the Manufacturing Specification [sic] for powders as from time to time amended in writing by [Foods], [Olmarc] shall promptly reimburse [Foods] for any unauthorized usage, losses, variances, shortages or damages to packing supplies, and other property ... in ... [Olmarc's] ... control. Paragraph 5 of the Agreement required Olmarc to make certain reports to Foods "in such forms as [Foods] may from time to time request, including weekly reports showing packing supplies received and ... used and inventories of packing supplies and daily reports of powders packed and ... shipped and powders on hand."

Further, Olmarc was required to make periodic reports to Foods ("Daily report of Hi-C DM and MMC," "Weekly Co-Packer Production and Inventory Report") in accord with the "Co-Packers Accounting Procedures Manual." Based on the various reports submitted by Olmarc and its own annual inventory, Foods calculated Olmarc's "actual performance" and billed or credited Olmarc for "authorized or unauthorized usage, losses, variances, shortages and damages." Complt at 5.

Foods determined Olmarc had "unfavorable usage variations, and physical inventory shortages" totalling $92,829.29 for the period January through December, 1981. Further variations shortages and damaged goods were found for the period December, 1981 through December, 1982 ($38,309.96 and $329.19). The Agreement was terminated in January of 1983. Thereafter Foods billed Olmarc for "net unfavorable usage variations, physical inventory shortages and damages" ($10,432.11) and for 5,500 "pallets" which were unaccounted for

by Olmarc ($24,700.00). Foods has repeatedly requested a total payment of $166,649.55 from Olmarc. Olmarc has repeatedly refused to pay Foods.

In its Answer Olmarc generally denies it is in breach of the Agreement and raises two affirmative defenses (estoppel and changed conditions) as well as two counterclaims (promissory estoppel and fraud by omission). Before the Court at this time is a motion by Foods to strike the affirmative defenses and to dismiss the counterclaims.

## I. AFFIRMATIVE DEFENSES

Ruling on Foods' attack of Olmarc's affirmative defenses requires a three part analysis.

1) Is the alleged "affirmative defense" really an affirmative defense, or is it simply a mistitled denial already contained in the answer?

2) If the matter is properly designated an affirmative defense, is it adequately pleaded under the Federal Rules of Civil Procedure (e.g., Fed.R.Civ.P. 8 and 9)?

3) Finally, is the affirmative defense legally sufficient under the standard identified in Fed.R.Civ.P. 12(b)(6)?

*See Instituto Nacional de Commercialización Agricola v. Continental Illinois National Bank & Trust Co.*, 576 F.Supp. 985, 988 (N.D.Ill.1983); *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736–37 (N.D.Ill.1982).

### A. ESTOPPEL

In support of its first affirmative defense Olmarc alleges the following:

1) Foods was informed of usage variations and inventory shortages in excess of those originally contemplated by the parties throughout the life of the Agreement;

2) with that information in its possession, Foods took no action against Olmarc;

3) Foods' inaction constituted acquiescence in Olmarc's performance;

4) Foods should be estopped from asserting the excess variations and shortages as a basis for recovery.

Ans at 3–4.

■ Olmarc must plead and prove six elements in order to make out an estoppel defense to Foods' claims. Olmarc must allege

1) words or conduct by Foods amounting to a misrepresentation or concealment of material fact;

2) either actual or implied knowledge by Foods that its misrepresentations were false when made;

3) a lack of awareness of the falsity of the representations at the time they were made and at the time there were relied upon;

4) Foods intent or its expectation that its representations or conduct would be acted upon by Olmarc (or the public in general);

5) actual reliance and action upon Foods' representations or conduct;

6) prejudice if Foods is allowed to deny its conduct or the truth of its representations.

*Lowenberg v. Booth*, 330 Ill. 548, 162 N.E. 191, 195 (1928); *Gary-Wheaton Bank v. Meyer*, 130 Ill.App.3d 87, 85 Ill.Dec. 180, 473 N.E.2d 548, 554–55 (2d Dist.1984); *Willowbrook Development Corp. v. Illinois Pollution Control Bd.*, 92 Ill.App.3d 1074, 48 Ill.Dec. 354, 416 N.E.2d 385, 389–90 (2d Dist.1981). *See also Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (CA 7 1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980) (estoppel arises when a party's conduct misleads another to believe a right will not be enforced and causes him to act to his detriment in reliance upon this belief).

■ Foods contends Olmarc has failed to plead the elements of equitable estoppel. First Foods argues Olmarc fails to allege it relied on any conduct suggesting a waiver of Foods' right to seek reimbursements for variances and shortages. Foods identifies a second defect in that Olmarc failed to allege it changed its position to its detriment in reliance on any Foods conduct approximating waiver. The Court agrees both of these allegations are absent from Olmarc's Answer and, therefore, the first affirmative defense cannot stand.

■ The Court's decision takes into account Olmarc's suggestion that this Court may infer detrimental reliance from what is stated in the Answer. On this motion, Olmarc is entitled to have its allegations taken as true; it also receives the benefit of all reasonable factual inferences following from those allegations. *See generally Wright & Miller, Federal Civil Procedure: Civil § 1363*. But Olmarc is not entitled to factual assumptions nor leaps in logic in the construction of its Answer.

Turning to the issue of amending the first affirmative defense, Foods offers two persuasive arguments why Olmarc should tread carefully. *See generally* Fed.R. Civ.P. 11. First, Foods argues that Olmarc could not have relied on any inaction or silence because the Agreement specifically and clearly holds Olmarc liable for any variances and shortages.[1] Moreover, Illinois law suggests any reliance by Olmarc on Food's silence or inaction would not be reasonable. *See Town & Country Bank of Springfield v. James M. Canfield Contracting Co.*, 55 Ill.App.3d 91, 12 Ill.Dec. 826, 370 N.E.2d 630, 633 (4th Dist.1977).

Second, Foods argues Olmarc may not allege reliance because it has already admitted (in its Answer) to receiving invoices from Foods for the variances and shortages which serve as the basis for this lawsuit. There would, of course, be no acquiescence or waiver by Foods if it requested reimbursement from Olmarc and Olmarc was aware of these requests. Hence no reliance by Olmarc could be justified. Ol-

---

**1.** This is only true in part. Foods could have waived its right to reimbursement from Olmarc, but the facts (at least so far) seem to contradict any waiver by Foods. *See John Kubinski & Sons, Inc. v. Dockside Development Corp.*, 33 Ill.App.3d 1015, 339 N.E.2d 529, 31–32 (1st Dist. 1975). *See also Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (CA 7 1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980).

marc claims that argument constitutes a misreading of the Answer because "while the defendant admits receiving invoices, it does not admit these invoices are the results of the audits now specified by the plaintiff. Consequently, as the nature of these invoices is still in dispute, the Court should not use them as the basis for negating the defendant's ability to amend." Deft's Memo at 3. This counter argument is unsound. While it is true that Foods cannot prevail unless it supplies facts to support the invoices this action is predicated upon, that does not mean Olmarc's disputation of those underlying facts rises to the level of an estoppel defense. Olmarc's theory appears to be that Foods' claim for reimbursement rests on faulty accounting, not that Foods has waived its right to reimbursement. The Court believes Olmarc's theory will be adequately preserved if it merely contests the factual basis supporting the invoices (Foods' basis for recovery), rather than raise the matter as an affirmative defense. For these reasons, Olmarc should consider very carefully any future amendment.

## B. CHANGED CONDITIONS/COMMERCIAL FRUSTRATION

The second affirmative defense is a rather brief allegation of what Olmarc calls "changed conditions"; Foods calls it "commercial frustration."[2] Olmarc alleges Foods changed the "nature and composition of the substances to be mixed, packaged and stored." These changes were made without prior notice to Olmarc and without Olmarc's agreement. Olmarc further alleges these changes caused usage variations and inventory shortages not contemplated by the parties. Ans at 4.

■ "Changed circumstances" constitutes an avoidance and is therefore properly pleaded as an affirmative defense under Fed.R.Civ.P. 8(c). Paragraph 23 of the Answer also comports with Federal pleading rules. Thus, the only issue is whether Olmarc has pleaded "changed circumstances" in accord with the Rule 12(b)(6) standard: can Olmarc prove any set of facts in support of its "changed circumstances" defense which would defeat Foods' complaint? Foods argues it cannot; the Court agrees.

The pleading of the following two elements would entitle Olmarc to relief (e.g. a defense) under a theory of commercial frustration:

1) the event leading up to the frustration of performance was not foreseeable;

2) the unforeseen event totally, or nearly totally, destroyed the value of the contract.

*Northern Illinois Gas Co. v. Energy Cooperative, Inc.,* 122 Ill.App.3d 940, 78 Ill. Dec. 215, 461 N.E.2d 1049, 1059–60 (3d Dist.1984); *Smith v. Roberts,* 54 Ill.App.3d 910, 12 Ill.Dec. 648, 370 N.E.2d 271, 272 (4th Dist.1977). Neither of these allegations is contained in Olmarc's Answer.

■ For example, Olmarc does not allege formula changes by Foods were not foreseeable. Olmarc does allege Foods made changes "without prior notice ... and without [Olmarc's] agreement," but those allegations do not constitute a lack of foreseeability. Indeed, rather specific language in the Agreement (granting Foods the right to vary specifications) seems to negate any finding of unforseeability.[3]

---

**2.** These allegations are contained in ¶ 23 of Olmarc's Answer. Although the Court finds Olmarc has failed to plead "commercial frustration," it is worth noting that ¶ 23 suggests paramount contract interpretation issues. Two of these issues are identified in the next footnote.

**3.** Foods argues it had the right to vary the specifications of its formula packed by Olmarc and, because Olmarc consented to the Agreement, Olmarc also "assumed the risk that it could pack the powdered mixes within the contract's variance limits even though the instruc-

tions of mixing and packing these powders were changed." Deft's Memo at 12. The Court agrees Foods had the express contract right to vary its formula as packed by Olmarc and that the existence of that right, more likely than not, rendered a formula change foreseeable. However, the Court does not agree Olmarc assumed the risk of shortages and variances resulting from a formula change. The logical extension of an assumption of risk theory in this case would provide Foods with the unilateral power to cause shortages and variances (attributable to

Additionally, Olmarc fails to allege the value of the contract was totally or nearly totally destroyed. The only allegation in support of this element is that changes by Foods caused shortages and variations not contemplated by the parties. There simply is no allegation of the effect of those shortages and variations on the value of the contract to Olmarc. Consequently, the motion to strike the second affirmative defense must be granted.

## II. THE COUNTERCLAIMS

Olmarc lodges two counterclaims against Foods: 1) promissory estoppel and 2) fraud by omission. Foods moves to dismiss both counterclaims.

## A. PROMISSORY ESTOPPEL

 The elements of an action for promissory estoppel are 1) an unambiguous promise, 2) which is expected or foreseeable to induce reliance, 3) which, in fact, causes reliance and 4) results in injury or detriment to the promisee. *Levitt Homes, Inc. v. Old Farm Homeowner's Asso.,* 111 Ill.App.3d 300, 67 Ill.Dec. 155, 444 N.E.2d 194, 204 (2nd Dist.1982); *Illinois Valley Asphalt v. J.F. Edwards Construction Co.,* 90 Ill.App.3d 768, 45 Ill.Dec. 876, 413 N.E.2d 209, 211 (3d Dist.1980). *See Restatement (2d) of Contracts* § 90. While the alleged promise need not be express, *Bank Computer Network Corp. v. Continental Illinois Nat'l Bank & Trust Co.,* 110 Ill.App.3d 492, 66 Ill.Dec. 160, 442 N.E.2d 586, 591 (1st Dist.1982), it must be unambiguous and must be made so as to reasonably expect it to produce action or forebearance. *Huggins v. Central Nat'l Bank of Matoon,* 127 Ill.App.3d 883, 82 Ill.Dec. 768, 469 N.E.2d 302 (4th Dist.1984).

 Olmarc's allegations regarding promissory estoppel are as follows:

1) Foods' representative promised Olmarc all of Foods' packaging business for Hi-C and Minute Maid drink bases if Olmarc "would secure sufficient machinery to handle all of [Foods] packaging needs."

2) Olmarc purchased and leased over $750,000.00 of machinery in reliance on the Foods' promise.

3) Olmarc informed Foods of its purchase and lease of machinery.

4) Despite its knowledge that Olmarc relied upon its promise (by purchasing and leasing machinery), Foods agreed to various packing arrangements with other packers.

5) Olmarc suffered damages as a result of the above actions by Foods.

Ans at 4–5. These allegations state a claim for promissory estoppel. All of the elements for a cause of action under Illinois law are pleaded. Foods certainly can ask no more under federal notice pleading requirements. *See* Fed.R.Civ.P. 8. Moreover, Foods' arguments in opposition to this counterclaim are essentially factual and are thus more properly addressed on a motion for summary judgment. For example, the Agreement, standing alone, is not so inconsistent with Olmarc's reasonable reliance claim that dismissal is appropriate. Consequently, the motion to dismiss the first counterclaim is denied.

## B. FRAUD BY OMISSION

Olmarc alleges Foods failed to inform it of certain material facts which ultimately misled and damaged Olmarc. Olmarc cites three material omissions by Foods.

Olmarc) simply by varying the formula specifications. That is a questionable interpretation of the Agreement and leads to a couple of fundamental issues: 1) Does the Agreement give Foods the right to reimbursement for shortages and variances which were caused by its own formula changes? 2) Even if Foods had such a right, does its exercise of that right comport with the good faith and fair dealing requirements read into every Illinois contract? *See Dayan's v. McDonalds Corp.,* 466 N.E.2d 758 (1st

Dist.1984); *Criscione v. Sears Roebuck & Co.,* 66 Ill.App.3d 664, 23 Ill.Dec. 455, 384 N.E.2d 91 (1st Dist.1978); *Martindell v. Lake Shore National Bank,* 194 N.E.2d 683 (1st Dist.1958); *Foster Enterprises Inc. v. Germania Federal Savings & Loan Asso.,* 97 Ill.App.3d 22, 52 Ill.Dec. 303, 421 N.E.2d 1375, 1381 (3d Dist.1981); *Stevenson v. ITT Harper, Inc.,* 51 Ill.App.3d 568, 9 Ill.Dec. 304, 366 N.E.2d 561, 567 (1st Dist.1977). *See also Rao v. Rao,* 718 F.2d 219, 222–23 (CA7 1983).

a) Foods was building its own packing plant which would compete with Olmarc and eventually draw off a "substantial part of the business promised to [Olmarc]."

b) Foods negotiated and agreed to have its bases mixed and packed by companies other than Olmarc.

c) In light of (a) and (b) Foods failed to inform Olmarc that Olmarc could not possibly "employ in a profitable fashion, the equipment it had bought in reliance on [Foods'] promise."

Presumably the promise referred to in part (c) above is the same promise identified in Answer ¶ 25 (e.g., to the effect that Foods promised Olmarc that Olmarc would receive all of Foods' Hi-C and Minute Maid packaging business).

 In order to prevail on its fraud theory Olmarc must plead and prove Foods 1) made a misrepresentation of a material fact 2) knowing it was false 3) with intent to induce Olmarc to rely upon it 4) which Olmarc reasonably relied and acted upon 5) to its detriment or damage. *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); *Dolce v. Dolce,* 108 Ill.App.3d 817, 64 Ill.Dec. 363, 439 N.E.2d 1028, 1032 (1st Dist.1982). Because Olmarc alleges Foods failed to make a representation when it ought to have made one, Olmarc must plead and prove a duty on behalf of Foods to make an affirmative statement. *Manning v. Ashland Chemical Co.,* 498 F.Supp. 1382, 1383 (N.D.Ill. 1980). *Cummings v. Dusenbury,* 129 Ill. App. 338, 84 Ill.Dec. 615, 472 N.E.2d 575, 581 (2d Dist.1984). Generally, such a duty arises in two circumstances: 1) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension, or 2) when the defendant owes some fiduciary duty to the plaintiff to make full and fair disclosure and fails to correct a misapprehension of a material fact. *Manning supra,* at 1383; *Tcherepnin v. Franz,* 393 F.Supp. 1197, 1217, (N.D.Ill.1975), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190

(1976); *Obermaier v. Obermaier,* 128 Ill. App.3d 602, 83 Ill.Dec. 627, 470 N.E.2d 1047, 1051 (1st Dist.1984).

 Additionally, Fed.R.Civ.P. 9(b) requires Olmarc to plead fraud with particularity. That requires Olmarc to plead the "time, place and particular contents of the false representations." *Bennett v. Berg,* 685 F.2d 1053, 1062 (CA 8 1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). The object of such specificity is to apprise the defendant of the claim against him and of the acts which the plaintiff alleges constitute fraud. *See generally Wright & Miller* § 1297. But Rule 9(b) does not negate the general pleading requirements of Rule 8 (*viz,* a short, plain statement of a claim and simple, concise, direct allegations). Thus, the balance between Rules 9(b) and 8 requires Olmarc to plead the particularities of fraud (time, place, contents), but it does not require Olmarc to plead evidence.

 Many of Foods' attacks on this counterclaim are focused on the Rule 9(b) particularity requirement. For example, Foods wants to know who was responsible for the omissions (Olmarc alleges Foods representatives were responsible) and the date of the omissions (Olmarc alleges the fraud took place in 1978). The Court finds Rule 9(b) entitles Foods to no more particularity than Olmarc has alleged in the Answer. To find otherwise would allow Rule 9(b) to swallow up the general pleading requirements of Rule 8. *See generally, Wright & Miller, supra,* § 1297–98.

More significant is Foods' argument that Olmarc fails to allege a duty on behalf of Foods to correct any particular misapprehension held by Olmarc. Foods argues that because neither a contractual nor a fiduciary relationship existed between the parties at the time of the alleged omission, Olmarc cannot expect the Court to find "a statement allegedly made in arms length negotiations ... somehow imposes a duty on a party to the contract to disclose all he ... knows about the pending transaction." From this Foods concludes Olmarc is unable to prove any set of facts which would

allow it to recover on the counterclaim. Pltf's Memo at 18. Olmarc counters with the suggestion that Foods mistakes its motion to dismiss as a motion for summary judgment. The Court agrees.

 The arguments made by Foods require factual determinations which the Court is unable to make on this motion to dismiss. Foods invites factual assumptions in its favor as a basis for the Court's review of its own arguments. On a motion to dismiss, the facts as alleged by Olmarc are taken as true. Thus, the only argument the Court can consider is whether Olmarc has alleged that Foods had a duty to disclose information which would correct Olmarc's misapprehension of material facts.

It is true that no fiduciary relation existed between Olmarc and Foods. They were parties to negotiation and contract, nothing more. So in order to impose a duty upon Foods to speak and correct misapprehensions, Olmarc must plead and prove that 1) Foods' acts contributed to Olmarc's misapprehension 2) of a material fact 3) which Foods intentionally failed to correct. These elements are alleged in the counterclaim.

 Olmarc alleges a representation by Foods that Olmarc would receive all of Foods' packaging business for Hi-C and Minute Maid. Ans at 4. That fact is material either to the terms of the Agreement or to Olmarc's subsequent purchase and lease of packing machinery. See Ans at 4–5. So too are the alleged omissions material (Foods was building its own packaging plant; Foods was making contemporaneous agreements with other packers; Foods knew Olmarc could not profitably operate on Foods' false promise). Ans at 5. Taking Olmarc's allegations as true for the purposes of this motion, such facts, if proved, could contribute to a misapprehension by Olmarc of which Foods was aware and which it intentionally failed to correct. If Olmarc can prove what it alleges, then Foods had a duty to speak and correct any misapprehension it helped create. The motion to dismiss the second counterclaim is denied.

## CONCLUSION

The motion to strike Olmarc's two affirmative defenses is granted. The motion to dismiss the two counterclaims is denied. This case is set for a status hearing 21 days from the date of this Order.

IT IS SO ORDERED.