Michael GASSNER, et al., Plaintiffs,

v.

STOTLER AND COMPANY, Defendant.

No. 86 C 6556.

United States District Court,
N.D. Illinois, E.D.

Oct. 21, 1987.

William M. Phelan, Thomas F. Burke and Bernard F. Doyle, Jr., Pheland and Doyle, Chicago, Ill., for plaintiffs.

Jeffrey M. Henderson and Thomas F. Kolter, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant's motion to dismiss, or in the alternative, for summary judgment. Defendant presents a multitude of arguments for dismissing this action and bases its motion on various rules of federal civil procedure. *See* Fed.R.Civ.P. 9(b), 12(b)(1), 12(b)(6), 56. For the following reasons, defendant's motion is denied.

### *Facts*

Defendant, Stotler and Company ("Stotler"), is a commodity trader on United States commodity exchanges. Stotler is an Illinois partnership with its principal place of business in Chicago, Illinois. In June, 1984, Stotler, through Benmore, Ltd., Benmore GmbH, and Boulden & Melli, its alleged agents in Europe, solicited funds from the plaintiffs, all West German citizens, for the purpose of trading financial futures on United States commodity exchanges. Stotler allegedly solicited plaintiffs with a prospectus which represented: 1) investors might realize tax-free returns of thirty to forty percent per year in futures investments at a "greatly reduced personal risk"; 2) each investor would have his own account or participate in a Stotler pool account; 3) each investor would have a stop-loss order which would limit "any possible loss ... to about 10% of the invested capital"; 4) each investor's money would be strictly segregated from that of the brokerage house; 5) pool accounts would be monitored by an independent accountant who would act as trustee of the funds and prepare a yearly audit of the accounts; and 6) stringent regulations of U.S. futures trading protected all participants from manipulation, fraud or false information.

The plaintiffs' investment funds were placed in an omnibus account even though plaintiffs requested individual accounts. From June through at least December, 1984, these funds were allegedly lost through unauthorized trading, failure to use stop-loss orders, and/or embezzlement by Stotler and/or its "agents."

Plaintiffs maintain five theories of recovery: 1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* 2) violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.;* 3) conspiracy to defraud; 4) breach of fiduciary duty; and 5) action for recission of the account relationship. Plaintiffs assert federal question jurisdiction under the CEA and RICO, and pendent and ancillary jurisdiction over the remainder of their claims.

### *Subject Matter Jurisdiction*

The primary basis for Stotler's motion to dismiss is that this court lacks subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Stotler contends that all the fraudulent activity took place in Germany and was perpetrated by entities which were not agents of Stotler. It also maintains the foreign transactions had no effect on the commodity exchanges in the United States.

The leading case in this circuit concerning jurisdiction over foreign-based commodity fraud is *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 730 F.2d 1103 (7th Cir.1984). The court in *Tamari* utilized two tests in finding the district court had jurisdiction over fraudulent activities occurring in Lebanon. The "conduct" test determines whether the conduct occurring in the United States is material for the successful completion of the alleged scheme. *Id.* at 1108. The rationale for this test is that under the CEA, Congress would not have intended the United States to be used as a base for effectuating the fraudulent conduct of foreign companies. *Id.; see also Psimenos v. E.F. Hutton & Co.,* 722 F.2d 1041, 1046 (2d Cir.1983); *SEC v. Kasser,* 548 F.2d 109, 116 (3d Cir.1977). Under the "effects" test, courts look to whether conduct occurring in foreign countries caused foreseeable and substantial harm to interests in the United States. *Tamari,* 730

F.2d at 1108; *see also Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409, 416–17 (8th Cir.1979); *ITT v. Vencap, Ltd.*, 519 F.2d 1001, 1015–17 (2d Cir.1975). The underlying theory for this test is that Congress intended to protect domestic markets and domestic investors from improper foreign transactions. *Tamari*, 730 F.2d at 1108; *see also Vencap*, 519 F.2d at 1016–17.

The *Tamari* court, implementing these two tests, held jurisdiction was proper:

> The transmission of commodity futures to the United States would be an essential step in the consummation of any scheme to defraud through futures trading on United States exchanges. Further, when transactions initiated by agents abroad involve trading on United States exchanges, the pricing and hedging functions of the domestic markets are directly implicated, just as they would be by an entirely domestic transaction. If the transactions are the result of fraudulent representations, unauthorized trading or mismanagement of trading accounts, prices and trading volumes in the domestic marketplace will be artificially influenced, and public confidence in the markets could be undermined.

730 F.2d at 1108. The court concluded that "Congress intended to proscribe fraudulent conduct associated with any commodity future transactions executed on a domestic exchange, regardless of the location of the agents that facilitate the trading." *Id.*

The holding of *Tamari* is dispositive of the jurisdictional issue before this court. Plaintiffs' complaint alleges that plaintiffs' funds were lost through unauthorized trading, failure to use stop-loss orders, and/or embezzlement by Stotler and/or its agents. Second Amended Complaint, ¶ 15. In other words, plaintiffs allege alternatively that either Stotler, or its "agents," or both Stotler and its "agents" were involved in this conduct. Alternative pleading is permitted under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(e)(2). Furthermore, plaintiffs allege that Stotler itself was involved in the scheme to defraud them. Second Amended Complaint, ¶¶ 11, 20–27,

36–39. On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The court must accept as true that the fraudulent conduct did not end in Germany. It extended to the United States commodity markets, at least as an alternative in plaintiffs' complaint, through unauthorized trading, failure to use stop-loss orders and/or embezzlement. Plaintiffs also allege Stotler itself was involved in the conspiracy to defraud plaintiffs of their investments. This is exactly the type of conduct the CEA was designed to prevent. *See* 7 U.S.C. § 6b. Moreover, under the "conduct" test, these activities in the United States were clearly material for the successful completion of the alleged scheme.

Furthermore, the conduct that occurred abroad satisfies the "effects" test. The fraudulent transactions were initiated by Stotler's agents in Europe. This conduct had a foreseeable and significant effect on interests in the United States. Not only have plaintiffs lost a substantial amount of money by trading on United States markets, but the public confidence of Americans in the markets themselves may be undermined. The fundamental purpose of the CEA is to ensure the integrity of the market. The integrity of the market will suffer if Stotler, a U.S. commodity broker, is proven to be involved in defrauding investors.

Therefore, under either the "conduct" or "effects" tests, this court has jurisdiction over this lawsuit. Defendant's reliance on *Mormels v. Girofinance, S.A.*, 544 F.Supp. 815 (S.D.N.Y.1982), is misplaced. In *Mormels*, the defendant in Costa Rica fraudulently held itself out as an agent of E.F. Hutton conducting commodity transactions. After receiving funds from the plaintiffs, defendant converted the funds and fled Costa Rica. The court held that because every fact necessary for the fraudulent conduct took place in Costa Rica, the federal court in New York did not have jurisdiction over the claim. *Id.* at 817–18.

The case at bar is far different. Plaintiffs allege that the European entities were actually the agents of Stotler,[1] and that their conduct had an effect on U.S. commodity markets. Second Amended Complaint, ¶ 5. More important to distinguishing *Mormels*, the complaint alleges that Stotler itself defrauded plaintiffs, lost plaintiffs' funds through unauthorized trading, and failed to use stop-loss orders. As such, this court must assert jurisdiction, unlike in *Mormels*, because this alleged conduct occurred in the United States. The court notes, however, that if it is subsequently determined that the entities in Europe were not Stotler's agents and that they themselves converted the funds without any contact with United States commodity markets, this court may dismiss this case for lack of subject matter jurisdiction.

### Forum Non Conveniens

■ Alternatively, Stotler argues this case should be dismissed under the doctrine of *forum non conveniens*. *Forum non conveniens* is the common law predecessor of statutory interdistrict transfer. *See* 28 U.S.C. § 1404. The two rules share common considerations, but are distinct in their operation and effect. For example, dismissal under *forum non conveniens* is, obviously, more permanent than a transfer between districts under § 1404. And, of course, a district judge has wider discretion to transfer a lawsuit than to dismiss one. *See generally Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 156 (2d Cir.1980) (en banc).

The doctrine of *forum non conveniens* allows a district judge to exercise his discretion and dismiss a case when the balance of private and public interests strongly favor an alternate forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–09, 67

S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947). Important private interest factors include: 1) the ease of access to sources of proof; 2) the availability of compulsory process for the attendance of unwilling (and the cost of obtaining the attendance of willing) witnesses; 3) the potential to view a place involved in the lawsuit (if necessary); and 4) any additional practical considerations that make trial of a lawsuit easy, expeditious, and inexpensive. *Id.* Public interest factors include: 1) the resulting administrative difficulties when litigation is added to already congested courts instead of handling the litigation where it originated; 2) imposition of the burden of jury duty on a community having no (or little) relation to the litigation; 3) the interest of a community in settling disputes at home; and 4) the expertise of the forum court in the application of the law that must govern the case. *Id.* Unless the balance strongly favors the defendant, plaintiffs' choice of forum should not be disturbed. *Id.* at 508, 67 S.Ct. at 843.

Before analyzing the private and public interest factors, the court must determine whether an alternative forum exists for this lawsuit. *Id.* at 506–07, 67 S.Ct. at 842. A German court is the likely alternative site for adjudication of this case. However, no suit has been filed there and it is uncertain whether that forum is available to plaintiffs. A German court may not have jurisdiction over Stotler. This court cannot justify dismissing this case under *forum non conveniens* when it is uncertain whether plaintiffs have an alternative forum which can hear their case.

Applying the private factors of *Gulf Oil*, an alternate German forum, were it available, would not clearly be favored over the plaintiff's choice of forum. Defendants argue that all the records regarding communications between the German entities involved in the fraud are out of the jurisdic-

---

**1.** Stotler, by way of affidavit, attempts to assert that the European entities are not agents of Stotler. Whether they are actually agents of Stotler is a conclusion of law, not a statement of fact. The actions of Stotler as well as their European counterparts may be enough to establish agency without the formal principal-agent relationship. German law may dictate in what manner the agency issue is decided. These are questions of law which the defendant cannot summarily assert by way of affidavit. Therefore, this court will not convert this motion to dismiss into a motion for summary judgment.

tion of this court. Although this may be true, the records of the transactions and communications that occurred in Stotler's offices are likely to be out of the jurisdiction of a German court. An important consideration in this case is that plaintiffs are suing Stotler for its role in the fraudulent conduct. Plaintiffs are not suing the German entities. Any records regarding fraudulent activity of Stotler itself would be located at its own offices in Chicago, Illinois. Moreover, plaintiffs have chosen a forum which is defendant's own "back yard." Given this fact, the court finds it difficult to accept defendant's argument that this forum is not as convenient as a German forum.

The public factors of *Gulf Oil* do not strongly favor a German forum. This litigation concerns a commodity broker located in Chicago, Illinois. This community has a great interest in maintaining the integrity of the commodity markets as well as protecting domestic investors from the fraudulent practices of brokers. Therefore, this court's expenditure of time and resources on this lawsuit is in the best interest of the local community. Moreover, if it is determined that German law should be applied to certain aspects of this case, this court can easily ascertain the applicable law.

Accordingly, defendant's motion to dismiss because of *forum non conveniens* is denied. Defendant has not met its burden of demonstrating that a German forum is, not only available, but clearly a more convenient forum where these matters may be litigated.

### Complaint Sufficiently States Claims

Defendant also contends plaintiffs have failed to state claims upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Stotler attacks plaintiffs' RICO, breach of fiduciary duty, recission, and CEA claims.

■ The complaint states a claim under RICO. The Seventh Circuit recently set forth the factors courts are to consider in determining whether a claim sufficiently alleges a pattern of racketeering activity under RICO. *See Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986).

Under *Morgan,* alleging two predicate acts no longer invariably establishes a pattern of racketeering activity. *Id.* at 975. There must be "continuity and relationship among the predicate acts." *Id.* The factors to be considered in determining whether sufficient continuity exists are: 1) the number and variety of predicate acts; 2) the length of time over which they were committed; 3) the number of victims; 4) the presence of separate schemes; and 5) the occurrence of distinct injuries. *Id.* The court concluded that the "mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Id.* at 975–76.

The present complaint sufficiently alleges a pattern of racketeering. Plaintiffs allege that the predicate acts consist of mail fraud in the mailing of monthly statements and trade confirmations to the plaintiffs. Second Amended Complaint, ¶¶ 21–22. They also allege wire fraud and transportation of stolen money. Second Amended Complaint, ¶¶ 24–25. Plaintiffs allege that those acts continued for a period of at least six months. Second Amended Complaint, ¶ 21. There were numerous victims of these alleged activities as evidenced by the number of plaintiffs in this case. The complaint also alleges distinct injuries to these numerous plaintiffs. Each plaintiff lost his or her investment in this venture, and each person's loss is separate and distinct from the others. The allegations of the complaint do not allege separate schemes. However, this court finds, as did the court in *Morgan,* that an allegation of just one scheme to defraud plaintiffs does not automatically defeat the complaint where the other factors discussed above sufficiently establish a pattern of racketeering.

■ Stotler also contends the complaint fails to allege an enterprise separate from the alleged pattern of racketeering. Under RICO, the liable "person" must be separate and distinct from the "enterprise" which has its affairs conducted through a pattern of racketeering. *Haroco, Inc. v. Ameri-*

can Nat'l Bank & Trust Co., 747 F.2d 384, 400 (7th Cir.1984). If the illegal predicate acts are eliminated, for purposes of argument, the enterprise would continue to exist. *United States v. Lemm*, 680 F.2d 1193, 1200–01 (8th Cir.1982). Plaintiffs here allege Stotler as the "person" and Stotler's "agents" in Europe as the "enterprises." Second Amended Complaint, ¶¶ 17, 18. The complaint alleges that Stotler's "agents" were, for the past five years, in the business of soliciting funds from individual customers in Europe for trading on commodity futures on United States exchanges through Stotler. Second Amended Complaint, ¶¶ 5, 9. These allegations, and the complaint as a whole, sufficiently demonstrate that Stotler and its "agents" were separate and distinct. Paragraphs 5 and 9 also sufficiently allege that the "agents" were an enterprise that existed apart from the pattern of racketeering involved in this case. They engaged for the last five years in the solicitation of funds for futures trading. Accordingly, the complaint states a cause of action under RICO.

■ Furthermore, Stotler argues that the complaint fails to state claims for breach of fiduciary duty and for recission. Stotler argues that because plaintiff's funds were placed in an omnibus account, there was no relationship between itself and the plaintiff. An omnibus account is an account with an exchange member firm opened by a non-member broker in its own name, without identifying the customers on whose behalf it is trading. *Mormels v. Girofinance, S.A.*, 544 F.Supp. 815, 817 n. 7 (S.D.N.Y.1982). The member firm acts as a broker for the non-member firm in executing the transactions. *Id.* Plaintiffs state in their response to this motion that liability under these two theories can be demonstrated by Stotler's statements in its prospectus, its false representations through the mails and by telephone, and its accepting orders that were contrary to the representations contained in the prospectus. They argue that merely because the plaintiffs' accounts were omnibus accounts does not shelter Stotler from liability under either an agency relationship or direct liability for its own actions. The court

agrees. The complaint sufficiently alleges a relationship between Stotler and the plaintiffs either through its agents or directly. Stotler cannot defeat its liability merely by demonstrating that the account was designated as a so-called "omnibus account." Therefore, plaintiffs have sufficiently pleaded claims for breach of fiduciary duty and for recission.

■ Additionally, Stotler argues that plaintiffs have failed to state a claim based on violations of the CEA. This argument is unfounded. The fraudulent commodity activity alleged in the complaint is exactly the type of conduct which the CEA was designed to prevent and which it specifically prohibits. *See* 7 U.S.C. § 6b. Furthermore, the Act provides a private right of action against Stotler, as a commodity broker, to any person who received trading advice from such broker for a fee. 7 U.S.C. § 25(a)(1)(A). Stotler, acting in concert with its "agents," furnished trading advice to the plaintiffs for a fee. Also, 7 U.S.C. § 25(a)(1)(B) provides a private right of action to any person who makes a contract for the sale of a commodity with a broker such as Stotler. This contractual relationship is also alleged in the present complaint. Thus, plaintiffs have stated a cause of action under the CEA.

*Pleading Fraud with Particularity*

■ Stotler's final contention is that plaintiffs have failed to plead fraud with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." This provision must be read together with the general requirements of Rule 8(a) that plaintiffs need only plead a short and plain statement of the claim showing their entitlement to relief. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975); Fed.R.Civ.P. 8(a). Read together, the rules require the time, place and contents of the fraud to be pleaded, but do not require the plaintiff to plead evidence. *Tomera*, 511 F.2d at 508; *Coca-Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F.Supp. 966, 973 (N.D.Ill.1985). Generally,

a complaint is considered sufficient if it sets forth the time, place, particular contents of the false representations, the identity of the party making the misrepresentations, and the consequences of the misrepresentations. *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F.Supp. 1262, 1265 (N.D.Ill.1985).

In the present case, plaintiffs have sufficiently set forth the time period during which the misrepresentations allegedly took place. *See Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983, 987 (N.D.Ill.1986) ("range of dates" sufficient); *Trak Microcomputer Corp. v. Wearne Bros.*, 628 F.Supp. 1089, 1092 (N.D.Ill.1985) ("general time period" sufficient); *Onesti*, 619 F.Supp. at 1265 ("approximate time frame" sufficient). The complaint alleges the misrepresentations were contained in a prospectus and sufficiently describes the contents of the false representations. *See* Second Amended Complaint, ¶¶ 11–13. The complaint identifies Stotler as the party making the representations. *Id.* It also alleges that plaintiffs lost their investments as a consequence of the misrepresentations. *See* Second Amended Complaint, ¶¶ 13–15.

In conclusion, plaintiffs have pleaded fraud with the specificity required by Rule 9(b). Therefore, they have stated a claim for fraud under the present complaint.

### Conclusion

This court has subject matter jurisdiction over this case. Moreover, the doctrine of *forum non conveniens* does not favor an alternative forum. Plaintiffs have sufficiently pleaded violations of RICO and the CEA, as well as claims for breach of fiduciary duty and recission. Finally, plaintiffs have pleaded fraud with sufficient particularity to satisfy the requirements of Rule 9(b). Accordingly, defendant's motion to dismiss, or for summary judgment, is denied.

IT IS SO ORDERED.