Monica **MOBLEY**, Debbie **DiFonzo, Jacquelyn Marzano Zullo** and **Susan Krauss–Calhoun, Plaintiffs,**

v.

**KELLY KEAN NISSAN, INC., Arthur Kelly, individually and d/b/a Kelly Kean Nissan, Inc., Hugo Meraz, individually and as Agent of Kelly Kean Nissan, Inc., Bob Breuer, individually and as Agent of Kelly Kean Nissan, Inc., and Anthony Skrapits, individually and as Agent of Kelly Kean Nissan, Inc., Defendants.**

No. 93 C 2625.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 8, 1993.

Steven Neal Fritzshall, Curtis Burke, Gleason & Fritzshall, Chicago, IL, for plaintiffs Monica Mobley, Debbie DiFonzo, Jacquelyn Marzano Zullo, Susan Krauss–Calhoun.

Dale Lehman Schlafer, Jack Steven Craven, Kiesler & Berman, Chicago, IL, for defendants Kelly Kean Nissan, Inc., Arthur

Kelly, individually and dba Kelly Kean Nissan, Inc.

Mark D. DeBofsky, DeBofsky & DeBofsky, Chicago, IL, for defendant Anthony Skrapits, individually, and as agent of Kelly Kean Nissan, Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Plaintiffs Monica Mobley ("Mobley"), Debbie DiFonzo ("DiFonzo"), Jacquelyn Marzano Zullo ("Zullo"), and Susan Krauss–Calhoun ("Calhoun") bring this 80–count sexual harassment and discrimination claim against Kelly Kean Nissan, Inc. ("Kelly Kean"), Arthur Kelly ("Kelly"), a co-owner of Kelly Kean, and various employees of the car dealership. Presently before us are Kelly and Kelly Kean's motions to dismiss and motion for a more definite statement, defendant Anthony Skrapits' motion to dismiss, and plaintiffs' motion to strike certain affirmative defenses. For the following reasons, we grant in part and deny in part defendants' motions to dismiss and deny plaintiffs' motion to strike.

### I. Factual Background

Mobley, DiFonzo, and Zullo each worked for Kelly Kean in the Sales Department, and each complains of sexual harassment and discrimination at the hands of Hugo Meraz.[1] Although details differ, the harassment each describes follows a certain pattern. Meraz, the direct supervisor of both Mobley and Zullo and DiFonzo's co-worker, routinely asked plaintiffs to sleep with him and described the type of sexual activity he had in mind. His advances included offers to buy plaintiffs lingerie, sexually explicit messages, requests that plaintiffs wear tight clothes to work, and phone calls to plaintiffs at their homes. Even more seriously, Meraz allegedly threatened not to approve plaintiffs' sales deals if they did not sleep with him, and touched and fondled the women's breasts, buttocks, and arms.

In addition to Meraz' unwanted attention, Zullo alleges that defendant Anthony Skrapits, the Service Manager, sexually harassed her. Skrapits allegedly directed offensive language and gestures at Zullo, whistled as she walked by, and frequently grabbed and tickled her in front of other employees and customers. Although Zullo complained to management about Skrapits' and Meraz' conduct, she charges that nothing was done.

Each of the women complained about the sexual harassment to office personnel. Mobley spoke to Bob Breuer, a Lease Manager at Kelly Kean, as well as Kelly himself. Neither took any action, and Kelly reportedly laughed when he learned of Meraz' conduct. Shortly after she complained, Mobley alleges that she was assigned to make coffee and copies—tasks that previously had not been among her duties. Additionally, she did not receive a promised promotion to the sales floor or a raise. As a result of her treatment, Mobley resigned.

DiFonzo and Zullo also complained to Kelly about Meraz' harassment. Despite frequent objections nothing was done, and both women eventually felt compelled to resign.

Calhoun worked as a receptionist at Kelly Kean under the supervision of defendants Breuer and Skrapits. Calhoun alleges that the two supervisors made crude comments to her and used hand motions to simulate oral sex. Additionally, Skrapits persistently asked Calhoun to sit on his lap and, on more than one occasion, touched and fondled her buttocks. Apparently more aggressive than Skrapits, Breuer frequently pulled Calhoun onto his lap, held her there against her will, and fondled her legs. Unhappy with her treatment, Calhoun made numerous complaints to Kelly Kean management. When Calhoun objected to Skrapits, he replied that "boys will be boys." Nothing was done to stop the harassment.

All four women lodged complaints with the EEOC and received right-to-sue letters.

---

1. Mobley and Zullo were delivery coordinator/sales trainees, while DiFonzo was a Sales Representative.

## II. Discussion

Kelly Kean and Kelly have moved jointly to dismiss over twenty counts of the complaint comprising three categories of claims—the sexual harassment claims deriving from Illinois law, the emotional distress claims, and the assault and battery claims. Skrapits has moved to dismiss all counts against him, arguing that he cannot properly be sued under Title VII, and that this Court has no subject matter jurisdiction over the remaining claims against him. Finally, plaintiffs move to strike several of Skrapits' affirmative defenses for vagueness. We address these motions in turn.

### A. Motion to Dismiss State Discrimination Claims

**(Counts 19, 20, 35, 36, 57, 58, 78 and 79)**

In Counts 19, 20, 35, 36, 57, 58, 78 and 79, plaintiffs allege that Kelly and Kelly Kean engaged in unlawful discriminatory employment practices in violation of Illinois law.[2] Defendants argue that not only have plaintiffs failed to identify the state law which they allegedly contravened, but the Illinois Human Rights Commission ("IHRC") possesses exclusive jurisdiction to adjudicate claims involving discriminatory practices under Illinois law.

■ In their brief, plaintiffs explain that the Illinois Constitution prohibits sexual discrimination and harassment. Specifically, Article I Section 17 of the state constitution states that "[a]ll persons shall have the right to be free from discrimination on the basis of . . . sex in the hiring and promotion practices of any employer. . . ." However, plaintiffs fail to recognize that the Illinois Human Rights Act ("IHRA"), which codifies this constitutional provision and forbids discrimination and harassment by employers, does not give plaintiffs a right to litigate their claims in court, but vests exclusive jurisdiction in the IHRC. 775 ILCS 5/8–103, 8–111; *Scott v. Sears, Roebuck & Co.*, 605 F.Supp. 1047 (N.D.Ill.1985) (the IHRA "vests in the [IHRC] exclusive jurisdiction over complaints by private parties."); *Sanders v. A.J. Canfield Co.*, 635 F.Supp. 85 (N.D.Ill.1986) ("The [IHRA] provides the exclusive remedy for violations of § 17; no independent right of action exists."). The law is clear, and plaintiffs may not bring their state law discrimination claims in this Court. We therefore dismiss Counts 19, 20, 35, 36, 57, 58, 78, and 79.

### B. Motion to Dismiss Emotional Distress Claims

**(Counts 7, 8, 27, 28, 45, 46, 66, and 67)**

■ Next, Kelly and Kelly Kean seek to dismiss plaintiffs' claims for emotional distress and loss of reputation, contending that the Illinois Workers' Compensation Act ("IWCA") preempts these counts. Indeed, the IWCA bars an employee from bringing a common law suit against his employer for accidental injuries sustained in the course of employment and compensable under the IWCA. Ill.Rev.Stat. ch 48, ¶ 138.5(a). An injury intentionally inflicted by a co-worker may still be "accidental" within the meaning of the IWCA if the employer did not direct, encourage, or expressly authorize the co-worker's conduct. See *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 564 N.E.2d 1222, 1226, 151 Ill.Dec. 560, 564 (1990).

Plaintiffs allege that the harassment here escapes preemption for several reasons. First, they point out that many of the incidents occurred outside the work place. Second, plaintiffs argue that Kelly's decision to do nothing in the face of frequent complaints about Meraz' behavior amounts, at the very least, to encouragement of the activity. Finally, plaintiffs maintain that some of the actors, as management-level employees, constituted alter-egos of Kelly Kean, making the company itself liable for deliberate acts of harassment.

■ While a garden variety incident of harassment by a co-worker generally arises out of employment and would be considered an accident compensable through Workers Compensation, plaintiffs here have alleged

---

**2.** Plaintiffs' complaint contains two counts numbered "58." Defendants' motion to dismiss targets the first Count 58, which sets out a claim for discrimination under Illinois law. As for the ensuing counts (which are inaccurately numbered), we will refer to them, as have the parties, by their current labels.

facts which distinguish their claim from the typical case of harassment. Some of the incidents occurred outside the workplace and, more importantly, management-level employees, including the co-owner of the dealership, had been notified of the harassment and chose to do nothing. Plaintiffs' allegations that defendants elected to stand idly by rather than attempt to prevent harassment of which they were aware amounts to an allegation that defendants encouraged and authorized the alleged conduct. *See Cline v. General Electric Capital Auto Lease, Inc.,* 757 F.Supp. 923 (N.D.Ill.1991). Claims based on such behavior, in turn, are not preempted by the IWCA, and we therefore deny defendants' motion to dismiss these counts of the complaint.

### C. Motion to Dismiss Assault and Battery Claims

**(Counts 11, 12, 30, 31, 49, 50, 70, and 71)** [3]

Each of the plaintiffs has charged Kelly and Kelly Kean with assault and battery. Defendants contend that these counts must be dismissed, since they cannot be held liable under *respondeat superior* for the torts of their employees. As plaintiffs point out, they do not seek to hold defendants liable under the theory of *respondeat superior,* but to hold them directly liable for the offensive conduct.

Both parties agree that *Hunter v. Allis–Chalmers Corporation Engine Division,* 797 F.2d 1417 (7th Cir.1986), controls this case. The *Hunter* court ruled that an employer can be held directly responsible for an intentional tort committed by one co-worker against another if management level employees knew, or in the exercise of reasonable care should have known, of such harassment, but failed to take reasonable steps to prevent the harassing conduct. *Id.* at 1422. The Seventh Circuit explained that

an employer is directly liable (that is, independently of respondeat superior) for those torts committed against one employee by another, whether or not committed in furtherance of the employer's business, that the employer could have prevented by reasonable care in hiring, supervising, or if necessary firing the tortfeasor. [citation omitted]. Consistent with this principle, an employer who has reason to know that one of his employees is being harassed in the workplace by others on grounds of race, sex, religion, or national origin, and does nothing about it, is blame-worthy.

*Id.* at 1422. The court was careful to note that such a standard does not place unreasonable demands on employers to monitor employee conduct, since casual, isolated incidents of harassment are unlikely to come to an employer's attention, while a responsible party will generally learn of campaigns of harassment. In this way, employers do not face strict liability for isolated slurs they could only prevent through Draconian means, but must simply "act reasonably in the circumstances." *Id.* at 1422.

Here, plaintiffs allegedly reported the incidents to management-level employees, including Kelly, yet nothing was done to halt the lewd and offensive behavior. These allegations permit an inference that relevant personnel were aware of the harassment and failed to take reasonable steps to halt it. We therefore deny defendants' motion to dismiss the assault counts against them.

### D. Motion to Dismiss Counts Against Skrapits

Defendant Skrapits has, on various grounds, moved to dismiss all counts against him.

#### (i) Title VII Claim (Count 40) [4]

Skrapits contends that he cannot be held liable under Title VII because he is not an "employer" within the meaning of the stat-

---

**3.** Although available to them, defendants have not argued that the assault and battery claims are preempted by the IWCA. In any event, as the discussion above indicates, such a contention would have been to no avail.

**4.** In his brief, Skrapits indicates that both Zullo and Calhoun have filed Title VII claims against him that must be dismissed. He does not, however, identify the counts containing these claims, and a review of the complaint reveals that only Zullo has filed a Title VII claim against Skrapits. *See* Cmplt. at Count 40.

ute. We have previously held that supervisors are not "employers" against whom Title VII actions may be maintained in their individual capacities. *Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476 (N.D.Ill.1993) (citing *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill. 1991)). Finding no reason to depart from our previous ruling, we dismiss Zullo's Title VII action against Skrapits.

■ At this juncture we must address Skrapits' request that we summarily dismiss the pendent state law claims against him on the grounds that no federal question remains in connection with plaintiffs' charges against him. To be sure, in other circumstances, Skrapits' appeal might present an interesting jurisdictional question. However, the situation at hand compels us to exercise our discretion to retain supplemental jurisdiction over plaintiffs' common law claims against Skrapits. 28 U.S.C. § 1367(c). Several of the claims going forward in this case involve the same set of facts that animate the state claims against Skrapits. Accordingly, in the interest of judicial economy and comity, we will not relinquish our supplemental jurisdiction despite the dismissal of the federal claim against Skrapits.

### (ii) Emotional Distress Claims (Counts 44 and 64) and Assault and Battery Claims (Counts 48 and 68)[5]

In arguing whether the IWCA preempts Zullo and Calhoun's emotional distress and assault and battery claims against Skrapits, both sides miss the boat. Skrapits argues that intentional tort claims are preempted by the IWCA, and cites *Collier* and *Juarez* in support. These cases, however, deal with the circumstances in which the IWCA preempts tort claims brought against an *em-*

*ployer,* and do not address the IWCA's preemption of intentional tort suits against *co-workers.* Plaintiffs compound the error by simply incorporating the preemption arguments they set forth in opposition to Kelly and Kelly Kean's motions to dismiss the emotional distress claims against them. To top off the confusion, in his reply, Skrapits actually criticizes plaintiffs for proffering arguments relevant only to preemption of tort actions levelled against employers.

■ Fortunately, the law in Illinois is clear. The state supreme court has held that "the exclusive remedy provisions of the Act do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts." *Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 564 N.E.2d 1222, 151 Ill.Dec. 560, 568 (1990). This sensible rule derives from the notion that a "co-employee should not be permitted to assert that the plaintiff's injuries were accidental and therefore barred under the exclusivity provisions of the Act, when he himself committed the intentional tort." *Id.* Zullo and Calhoun have more than adequately alleged that Skrapits' knowingly harassed them and intentionally caused emotional distress and that he assaulted and battered them.[6] Accordingly, we deny Skrapits' motion to dismiss Counts 44, 64, 48 and 68.

### (iii) Illinois Discrimination Claims (Counts 56 and 76)

Like Kelly and Kelly Kean, Skrapits challenges this Court's jurisdiction to hear claims stemming from alleged violations of Illinois discrimination laws. As we concluded above, the Illinois Human Rights Act vests exclusive jurisdiction to hear such complaints with the Illinois Human Rights Commission. Counts 56 and 76 are therefore dismissed.

---

**5.** Although Skrapits seeks to dismiss Counts 49 and 50, these counts state causes of action against defendants Kelly and Kelly Kean, and we will not address them here.

**6.** In Counts 44 and 64, Zullo and Calhoun allege that "Defendant, Skrapits, by his conduct, including but not limited to, stripping Plaintiff of her former duties, denied Plaintiff all meaningful job responsibilities, and assigning her menial

make-work tasks, has intentionally caused Plaintiff to suffer severe emotional distress." Unlike Mobley, however, neither Zullo nor Calhoun alleged facts which support the charges that Skrapits demoted either plaintiff, or did anything to directly affect their job responsibilities. Instead, the allegations simply support the charge that Skrapits intentionally harassed plaintiffs.

### E. Motion to Strike Certain of Skrapits' Defenses

Plaintiffs have moved to strike three of Skrapits' affirmative defenses, arguing that they are mere conclusions and fail to comply with the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2).[7] Given Skrapits' motions and our rulings regarding the first and third affirmative defenses, plaintiffs' request to strike these defenses is moot. We turn, then, to the second affirmative defense.

We observe at the outset that motions to strike are disfavored and will be granted only where the pleading at issue is patently defective and could not succeed under any circumstances. Furthermore, federal courts adhere to a system of notice pleading, whereby parties need only notify the other side of the nature of their claims or defenses and need not plead with particularity. In his second affirmative defense, Skrapits asserts that plaintiffs failed to mitigate their damages. Failure to mitigate is properly asserted as an affirmative defense, and while Skrapits' second affirmative defense might have been more fully pleaded, it apprises plaintiffs that he intends to argue that they failed to mitigate their damages. Accordingly, we will not strike it. *See Carpenter v. Ford Motor Co.,* 761 F.Supp. 62, 65 (N.D.Ill.1991) (facing similarly pled affirmative defense of failure to mitigate damages, court refused to strike defendant's pleading).

### III. Conclusion

For the foregoing reasons, we grant in part and deny in part Kelly and Kelly Kean's motions to dismiss, grant in part and deny in part Skrapits' motion to dismiss, and deny plaintiffs' motion to strike. Accordingly, we hereby dismiss Counts 19, 20, 35, 36, 40, 56, 57, 58, 76, 78, and 79. It is so ordered.

**7.** The affirmative defenses at issue read as follows:

*First Affirmative Defense*
Plaintiffs fail to state claims upon which relief may be granted.

*Second Affirmative Defense*
Plaintiffs have failed to mitigate their damages, if any.
*Third Affirmative Defense*
Plaintiffs have failed to fulfill the prerequisites to suit under Title VII of the Civil Rights Act of 1964, as amended.