CODEST ENGINEERING, an unincorporated joint venture of Compagnia Europea Appalti S.p.A, an Italian Corporation, and Rizzani De Eccher S.p.A., an Italian Corporation, Plaintiff,

v.

HYATT INTERNATIONAL CORPORATION, a Delaware Corporation, Defendant.

No. 94 C 7335.

United States District Court,
N.D.Illinois,
Eastern Division.

Dec. 23, 1996.

Leslie D. Locke, Michael Ross Phillips, Ross & Hardies, P.C., Chicago, IL, for Codest Engineering.

Harold Roderic Heard, Brian W. Lewis, Adam J. Glazer, David M. Simon, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Hyatt Intern. Corp.

*MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

Before the court are two motions by plaintiff Codest Engineering ("Codest"). In its first motion, Codest moves to strike each of defendant Hyatt International Corporation's ("Hyatt") affirmative defenses, pursuant to Federal Rule of Civil Procedure 12(f). Codest also moves to dismiss Hyatt's counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, plaintiff's motion to strike defendant's affirmative defenses is granted in part and denied in part. Plaintiff's motion to dismiss defendant's counterclaim is granted in part and denied in part.

## I. Factual Background

Codest's complaint contains the following allegations. Codest is a professional engineering firm and general contractor that submitted, at Hyatt's request, a proposal for the design, construction, and outfitting of a Hyatt hotel complex in Moscow, Russia. (Compl., ¶¶ 2, 7). Following this submission, Hyatt asked Codest to provide certain "pre-construction services" and to work with it to modify the project's design to reduce the projected construction costs. (*Id.* ¶ 8). Because Codest needed to retain and pay outside design consultants and expected to incur substantial out-of-pocket expenses relating to these pre-construction services, it met with representatives of Hyatt at Hyatt's corporate headquarters in Chicago, Illinois, to negotiate an agreement governing the provision of and payment for those services. (*Id.* ¶¶ 9–10). As a result of these negotiations between Codest and persons who purportedly represented Hyatt, a letter of agreement ("Letter Agreement") was signed on June 1, 1990, by and between Codest, Hyatt, and Moscow International Hotels ("MIH"). (*Id.* ¶¶ 9–11). Codest contends that MIH was a shell corporation established by Hyatt, and was financially dependent upon and "dominated and controlled by" Hyatt's management. (*Id.* ¶ 10). The June 1, 1990 Letter Agreement stated in pertinent part that MIH was the owner of the Moscow Hyatt hotel complex; that the "Owner has nominated Hyatt ... to coordinate the appointment of a general contractor," (*id.* Exh. A, preface);

and that the "Owner and Hyatt hereby appoint Codest Engineering as the general contractor for the Project," (*id.*, Exh. A, ¶ 1).

In accordance with the terms of the Letter Agreement, Codest hired consultants and designers to prepare designs and documentation for the construction project. (Compl., ¶ 12). In addition to these expenses, Codest incurred additional costs and expenses after Hyatt repeatedly changed and delayed its plans for the Moscow hotel complex. (*Id.* ¶ 13). To remedy this situation, Codest and Hyatt executed an amendment ("Amendment") to the June 1, 1990 Letter Agreement on January 31, 1991. (*Id.* ¶ 14). Under the terms of paragraph four ("¶ 4") of the Amendment, the "parties agree[d] that the outstanding cost due to Codest is U.S. $597,-000." (*Id.*, Exh. B, ¶ 4). The Amendment also provided that Codest was to be paid $200,000 on or before March 1, 1991, and that the balance plus interest (11% per annum) was to be paid either with Codest's first project progress claim or "not later than 5 months from the expiration of [the Amendment]." (*Id.*). Paragraph nine of the Amendment ("¶ 9") further provided that Codest would incur $368,500 in additional pre-construction costs for services rendered after January 31, 1991. (Compl., ¶ 14(b)). Codest actually incurred $271,000 in additional expenses such that a total of $869,400 was due and owing to Codest under the Amendment as of March 1, 1991. (*Id.* ¶ 17). Several months after Codest and Hyatt executed the written amendment, Hyatt allegedly executed or caused to have the amendment executed by Volage, the successor to MIH. (*Id.* ¶ 16).

Hyatt failed to pay the $200,000 due on March 1, 1991; instead, it paid $100,000 in May 1991. (Compl., ¶¶ 18–19). Hyatt thereafter refused to pay any additional money to Codest on the grounds that Volage was developing the Moscow hotel complex and that Hyatt's role had been to provide limited technical advisory services to Volage. (*Id.*). Hyatt further advised Codest that Volage did not intend to proceed with the project. (*Id.* ¶ 19). Codest contends, however, that Hyatt was the principal developer. To that end, Codest alleges that it always dealt with

Hyatt officers who never identified themselves as agents or employees of Volage, that Hyatt conducted all contractual and technical negotiations with Codest, and that Hyatt signed all of the resulting agreements. (*Id.* ¶ 21).

Codest makes the following claims in its complaint. In Count I, Codest alleges that Hyatt failed to pay Codest both the ¶ 4 agreed payment and the ¶ 9 payment obligation. In Count II, Codest alleges that Hyatt failed to provide funding for Volage to pay the ¶ 4 agreed payment and the ¶ 9 payment obligation. Count III alleges that Hyatt failed to exercise its best efforts to secure financing for the Hyatt Moscow complex. In Count IV, Codest claims an account stated in the amount of $847,612.50 as of December 1994, consisting of the ¶ 4 agreed payment of $597,500 and interest at the agreed rate of 11 %. Finally, Count V advances a claim in the alternative that Volage is Hyatt's alter ego and/or agent and that Hyatt is liable for Volage's debt to Codest under the Amendment.

## II. Plaintiff's Motion to Strike Affirmative Defenses

### A. Legal Standard for Motions to Strike Affirmative Defenses

Motions to strike affirmative defenses are governed by Rule 12(f) of the Federal Rules of Civil Procedure, which provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

*Fed.R.Civ.P. 12(f).*

■ Courts have consistently disfavored motions to strike affirmative defenses. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir.1991); *Wilson v. City of Chicago*, 900 F.Supp. 1015, 1023 (N.D.Ill.

1995). Generally, such motions will only be granted if the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993); *see also Williams*, 944 F.2d at 1400 (7th Cir.1991) (stating that court will not grant motion to strike affirmative defenses unless it finds that defense is insufficient on face of pleadings, and "it appears to a certainty that plaintiff would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings") (citations omitted). Before a motion to strike can be granted, the court must "be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Lirtzman v. Spiegel, Inc.*, 493 F.Supp. 1029, 1031 (N.D.Ill.1980) (citation omitted).

■ Affirmative defenses are pleadings and are therefore subject to all pleading requirements of the Federal Rules of Civil Procedure. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989); *Flasza v. TNT Holland Motor Express, Inc.*, 155 F.R.D. 612, 613 (N.D.Ill.1994). Whether or not a defense fulfills the Rule 12(b)(6) standard depends on whether it would be impossible for the defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill.1982). Thus, affirmative defenses must set forth a "short and plain statement" of the defense. If an affirmative defense is insufficient on its face or comprises no more than "bare bones conclusory allegations," it must be stricken. *Heller*, 883 F.2d at 1294–95; *Flasza*, 155 F.R.D. at 613–14. Under this standard, generally pleaded defenses have been held sufficient, and invulnerable to a motion to strike, as long as the pleading gives the plaintiff fair notice of the nature of the defense. *Mobley*, 864 F.Supp. at 732, 5 Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1274.

## B. Analysis[1]

### 1. First and Second Affirmative Defenses

■ In its first affirmative defense, defendant asserts that the contractual obligations alleged in the complaint are the exclusive responsibility of Volage; in its second affirmative defense, Defendant asserts that if it is liable in this case, Volage and Perestroika Joint Venture ("PJV")[2] are jointly liable and are indispensable parties. Plaintiff argues that, as to Counts I through IV, the first and second affirmative defenses are legally insufficient because they are barred by the law of the case. This argument is based on this court's order of November 6, 1995, denying defendant's motion to dismiss pursuant to Rule 12(b)(7) and Rule 19. In that order, the court found that Hyatt was Volage's agent only for the limited purpose of " 'coordinat[ing] the appointment of a general contractor.... [A]ny duties assigned to Hyatt under the [Letter A]greement that did not relate to its coordination of the appointment of a general contractor were contractual obligations that Hyatt agreed to perform in its individual capacity.' " *Codest Eng'g v. Hyatt Int'l Corp.*, No. 94 C 7335, 1995 WL 683505, at *5 (N.D.Ill.1995) (quoting June 1, 1990 letter agreement). Likewise, the court found that "Hyatt could not have executed the [Amendment] as Volage's agent since Hyatt's status as MIH's agent terminated upon the appointment of Codest as the general contractor." *Id.*

■ However, in its Minute Order of May 3, 1996, the court stated that, while it had

> previously found that Hyatt was MIH's agent for a limited purpose, that finding must not be unreasonably extrapolated beyond its underlying factual predicate. The court made this finding prior to the start of discovery and based upon the then existing pleadings and exhibits. The law of the case doctrine does not foreclose the court from reconsidering its ruling, provided

clear and convincing reasons to do so emerge during discovery.

Minute Order of May 3, 1996 (citations omitted). The law of the case doctrine establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit. *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.); *Williams v. Commissioner*, 1 F.3d 502, 503–04 (7th Cir.1993); 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478, at 789–90. But this is no more than a presumption, one whose strength varies with the circumstances; it is not a straightjacket. *Philips Medical Systems Int'l B.V. v. Bruetman*, 8 F.3d 600, 603 (7th Cir.1993); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995). The Seventh Circuit has stated that rulings may be reconsidered "if new information convinces [the court] that they are incorrect." *Williams*, 1 F.3d at 503. A judge may reexamine his earlier ruling if (1) he strongly and reasonably believes his previous ruling was wrong and (2) rescinding it would not cause undue prejudice to the party that had benefitted from it. *Id.*

In this case, Hyatt's first and second affirmative defenses rely at least in part on the assumption that Hyatt was merely an agent for MIH/Volage when it signed both the Letter Agreement and the Amendment. This clearly contradicts the law of the case. However, Hyatt has now submitted pages from depositions of three of its employees that support the inference that Hyatt signed both agreements only as agent for MIH/Volage, and that its status as an agent was disclosed to Codest. For example, Hyatt's former Director of Construction, Peter Murphy, testified that the parties understood that the services Codest performed were done for Volage as the "owning company," and that it was Volage that was contractually obligated to make payment. (*See* Murphy Dep., at 39, 86–92, 96). In addition, Daniel Larkin, Hyatt's Associate General Counsel, testified

---

1. Hyatt claims that the court should not consider Codest's motion to strike because it was originally filed beyond twenty days after service of the pleadings as is required by Rule 12(f). However, Rule 12(f) permits district courts to consider a

motion to strike at any point in a case. *See Williams*, 944 F.2d at 1399.

2. PJV is a Russian corporation that is a joint venturer in, and shareholder of, Volage.

**1230**

that Codest had been informed that Volage was the only entity to whom Codest could look for payment. (*See, e.g.,* Larkin Dep., at 109–10). This evidence is not alone sufficient to sustain Hyatt's burden of proving a manifest error of law in this court's previous ruling. However, it does raise questions of fact and shows that questions of law are not clear and are in dispute. The court cannot say "that under no set of circumstances could the defense[s] succeed." *Lirtzman,* 493 F.Supp. at 1031. For that reason, Codest's motion to strike the first and second affirmative defenses is denied.

**2. Third and Fourth Affirmative Defenses**

■ Codest also argues that the third and fourth affirmative defenses do not state a defense or a basis for set-off to the ¶4 agreed payment in Counts I, IV, or V. In those defenses, Hyatt asserts that Codest allegedly breached its contractual duties "to provide support in the relations with SACE" and "to confirm ... the price for the services it was to provide." Codest argues that its non-performance of the agreements would not be a defense to Hyatt's failure to make the ¶4 payment, because that payment was an unconditional promise to pay for services already rendered. Furthermore, Codest argues that its non-performance of the agreements cannot be the basis for a set-off, due to the fact that Hyatt's failure to make the ¶4 agreed payment was a material breach of contract as a matter of law.

In response, Hyatt does not respond to these arguments, but merely states that, based on discovery taken to date, there is evidence that Volage received the purported benefits of Codest's services and was the entity that promised to make payment. (*See, e.g.,* Murphy Dep., at 39, 86–92, 96). As noted in subsection II.B. 1, *supra,* while this evidence may not be sufficient to sustain Hyatt's burden of proving a manifest error of law in this court's previous ruling, it is enough for this court to deny the motion to strike the affirmative defenses. In addition, the court declines at this time to decide the issue of whether Hyatt made an "unconditional promise to pay" or whether its failure

to pay was a "material breach of contract as a matter of law."

**3. Fifth Affirmative Defense**

■ Hyatt's fifth affirmative defense is that Codest "has failed to effectively mitigate its damages as required by law." Failure to mitigate damages is appropriately brought as an affirmative defense. *See Fleming v. County of Kane, State of Illinois,* 898 F.2d 553, 560 (7th Cir.1990). Codest argues that this defense must be stricken, however, because Hyatt has not pled any facts in support of the defense as required by Rule 8(a). An identical argument was considered in *Sanchez v. La Rosa Del Monte Express, Inc.,* No. 94 C 3602, 1994 WL 603901, at *2 (N.D.Ill.1994) (Moran, J.). In *Sanchez,* the plaintiff asserted that the defendant's bare allegation that the plaintiff had failed to mitigate her damages did not include any facts sufficient to meet the requirements of Rule 8. The *Sanchez* court rejected this assertion and denied the plaintiff's motion to strike the affirmative defense. *Id.* In doing so, the court noted that Rule 8 merely requires a "short and plain" statement, and thus demands only that the party raising the affirmative defense provide enough facts to place its opponent on notice of the events on which the claim is based. *Id.* The court further emphasized that since the litigation was at an early stage, it would be unreasonable for the defendant to have detailed information about the plaintiff's post-termination conduct. *Id.; see also Carpenter v. Ford Motor Co.,* 761 F.Supp. 62, 65 (N.D.Ill.1991).

Unlike *Sanchez,* this case is not at an early stage and some discovery has been taken. It is not unreasonable at this time for Hyatt to know which of Codest's actions constituted failure to mitigate damages. Although the federal system of notice pleading requires only that the defendant notify the plaintiff of the nature of its defense, the defendant in this case has not provided any, let alone enough, facts to put the plaintiff on notice of the events on which it bases its claim of failure to mitigate damages. Rule 8 obligates Hyatt to provide enough facts to put Codest on notice of the course that Hyatt

contends Codest was legally required, but failed, to pursue. For this reason, the court grants Codest's motion to strike Hyatt's fifth affirmative defense, and also grants Hyatt leave to amend its pleadings, if it can, to conform with Rule 8.

### 4. Sixth Affirmative Defense

In its sixth affirmative defense, Hyatt argues that Codest is estopped from piercing Volage's corporate veil and from looking to Hyatt for satisfaction of Volage's debts, because of its knowledge of Volage's corporate structure and financing when it signed the Letter Agreement. Codest argues that this defense is legally insufficient because it does not allege that Hyatt detrimentally relied on Codest's actions, a necessary element of estoppel under Illinois law. Furthermore, Codest argues that the defense is barred by the rule against parol evidence: The obligations of the contracting parties are determined from the terms of the written contract; those terms may not be contradicted by parol evidence. Thus, Codest argues that since the sixth affirmative defense contradicts the express promises to pay in ¶ 4 and ¶ 9 of the Amendment, it is barred by the rule against parol evidence.

To properly assert an estoppel defense, thereby giving adequate notice to the opposing party under Rule 8(c), three elements must be pleaded: (1) a party has acted; (2) another party reasonably relied on those acts; and (3) the latter party thereby changed its position for the worse. *General Electric Capital Corp. v. Munson Marine, Inc.*, No. 91 C 5090, 1992 WL 24067, at *2 (N.D.Ill.1992) (citing *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 738 (N.D.Ill. 1982)); *see also* 18 I.L.P. Estoppel § 22.

The court agrees with Codest that Hyatt's sixth affirmative defense does not *explicitly* allege detrimental reliance (i.e., that Hyatt relied on Codest's actions and thereby changed its position for the worse). However, the court is permitted to infer detrimental reliance from that which is stated in the defendant's answer. *See Coca–Cola Co. Foods Div. v. Olmarc Pkg. Co.*, 620 F.Supp. 966, 970 (N.D.Ill.1985). It can reasonably be inferred from Hyatt's answer that, when it entered into the agreements with Codest and Volage, it relied on (1) Codest's knowledge that the project was a speculative undertaking and (2) Codest's understanding that it would receive no payment if sufficient financing was not obtained. The court thus finds that Hyatt's sixth affirmative defense and answer adequately plead an estoppel defense. The court also finds that the defense is not barred by the rule against parol evidence, because Illinois law allows extrinsic evidence to demonstrate ambiguity in a contract. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). Therefore, Codest's motion to strike the sixth affirmative defense is denied.

### 5. Seventh Affirmative Defense

Finally, Codest argues that Hyatt's seventh affirmative defense, which simply states that "Plaintiff's Complaint fails to state a claim upon which relief can be granted against Hyatt" is legally insufficient.

Defendants may assert failure to state a claim as an affirmative defense. As the Federal Rules indicate, a party may raise that defense even at a trial on the merits. *Fed.R.Civ.P. 12(h)(2); Van Voorhis v. District of Columbia*, 240 F.Supp. 822, 824 (D.D.C.1965). However, in this case, Hyatt's assertion is no more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). It fails to refer to any particular count of Codest's complaint and fails to notify Codest of any specific infirmities in the complaint. Since the seventh affirmative defense is merely a "bare bones, conclusory allegation" that Codest fails to state claims, the court will strike this defense without prejudice. Hyatt is granted leave to amend its pleadings to conform with Rule 8.

### 6. Conclusion

In light of the stringent standards that must be met in order to grant a motion to strike, this court grants in part and denies in part the motion to strike Hyatt's affirmative defenses. Hyatt's fifth and seventh affirmative defenses are stricken and Hyatt is given leave to amend its pleadings to comply with

the pleading requirements of the Federal Rules.

Plaintiffs will have the opportunity to disprove Hyatt's remaining affirmative defenses at trial or in a motion for summary judgment. Defendant is, however, reminded that its pleading of affirmative defenses is subject to Rule 11. If, in the course of discovery, it appears that there is no good-faith basis for a particular defense, Hyatt may be subject to sanction. Sanctions will be particularly appropriate if Codest is compelled to expend time and money demonstrating the frivolousness of Hyatt's affirmative defenses.

### III. Plaintiff's Motion to Dismiss Counterclaim

#### A. Allegations of the Counterclaim

In its counterclaim, Hyatt asserts two claims: breach of contract and breach of the duty of good faith. Count I, for breach of contract, makes the following allegations. Hyatt signed the 1990 Letter Agreement as the disclosed agent of Volage. Under the terms of the Letter Agreement, Hyatt and Volage were required to "exercise best efforts to secure the financing of the Project." (Counterclaim, ¶ 9). Codest was required "to provide support in the relations with SACE [the Italian export credit agency]" in order to help secure financing for the hotel project, and to confirm its firm price at or below a target minimum level for the construction services to be provided. (Id. ¶ 9). While Hyatt complied with the terms of the Letter Agreement, "Codest failed to provide the required support in relations with SACE." (Id. ¶¶ 11–12). Furthermore, Codest failed to confirm with Volage and Hyatt the price for services it was to provide in connection with the planned hotel complex, thereby adversely affecting the project's ability to obtain needed financing. This failure to confirm the price for its services was a proximate cause of the failure of Volage to complete the hotel complex project.

Hyatt's claim for breach of the duty of good faith in Count II relies on the same factual allegations and portions of the Letter Agreement upon which Count I is based. Hyatt alleges that Codest breached its duty by failing "to provide the necessary support in relations with SACE and other project lending banks to allow for and maximize the likelihood that the hotel complex would receive the guaranteed tranche of the loan facilities, ... with the knowledge that failing to provide such necessary support would adversely affect Hyatt's interests and the success of the hotel complex project." (Counterclaim, ¶ 17).

Codest challenges both counts of the counterclaim on the grounds that: (1) the breach of contract claim improperly relies upon the original Letter Agreement executed by Codest, Volage, and Hyatt before any amendment, and (2) the breach of the duty of good faith claim does not assert an independent cause of action.

#### B. Legal Standards for Motions to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); see also Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir.1996). However, the court need not strain to find favorable inferences which are not apparent on the face of the complaint. Coates v. Illinois St. Bd. of Educ., 559 F.2d 445, 447 (7th Cir.1977). Similarly, the court is not required to accept legal conclusions either alleged or inferred from pleaded facts. Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir.1995) (citing Nelson v. Monroe Regional Medical Ctr., 925 F.2d 1555, 1559 (7th Cir.), cert. denied 502 U.S. 903, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991)). Finally, the complaint need not specify the correct legal theory nor

point to the right statute to survive a Rule 12(b) motion to dismiss, provided that "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). The complaint must, however, state either direct or inferential allegations concerning all material elements necessary for recovery under the chosen legal theory. *See* Glatt v. Chicago Park Dist., 847 F.Supp. 101, 103 (N.D.Ill. 1994).

## C. Analysis

### 1. Count I

■ Codest argues that Hyatt's breach of contract claim is based on a superseded contract, in violation of the Illinois rule that, where a contract is modified by a subsequent agreement, suit must be brought on the contract as modified and not on the original agreement. *See Northwest Lincoln–Mercury v. Lincoln–Mercury Div., Ford Motor Co.,* 158 Ill.App.3d 609, 613, 110 Ill.Dec. 633, 636, 511 N.E.2d 810, 813 (1st Dist.), *appeal dismissed,* 116 Ill.2d 562, 113 Ill.Dec. 303, 515 N.E.2d 112 (1987). Thus, Codest argues that the 1991 Amendment took the place of the 1990 Letter Agreement and that Hyatt may not rely solely on the provisions of the latter document.

In response, Hyatt notes that the Amendment signed by Codest, Volage, and Hyatt in January 1991, while modifying the scope, design, and cost of the project and providing for a payment schedule to Codest by Volage, explicitly stated that "Except as expressly amended hereby, the terms of the Letter shall remain in full force and effect."

This argument, in combination with other evidence presented by Hyatt and this court's disposition of the issues related to the motion to strike the affirmative defenses, supports the conclusion that there may be facts which, if proven by Hyatt, would entitle it to recovery on its breach of contract counterclaim. Thus, Codest's motion to dismiss Count I is denied. Of course, as this court stated in its Minute Order of May 7, 1996, "Codest is free to move for summary judgment on the counterclaim concerning Hyatt's agency status."

Such a motion, however, should await the conclusion of all discovery.

### 2. Count II

■ Codest argues that Hyatt's claim for breach of the duty of good faith should be dismissed as duplicative because an alleged breach of an express contract term does not give a contract party two independent claims for relief: one for breach of contract and one for breach of the duty to deal in good faith. A claim for breach of the duty to deal in good faith that merely reiterates the allegations of a separate breach of contract claim should be dismissed. *See Pepsico, Inc. v. Vita–Fresh Vitamin Co.,* Nos. 85 C 1794, et al., 1986 WL 4456, at *2 (N.D.Ill.1986). This rule is based on the principle that an obligation to deal in good faith is implied in all Illinois contracts as an "aid and furtherance of other terms of the agreement of the parties." *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 565 (7th Cir.1991) (citation omitted). This principle precludes separate claims for breach of implied good faith duties that allege only violation of express contractual terms.

In this case, both Count I and Count II rely on the same provisions of the 1990 Letter Agreement. Therefore, Count II will be dismissed as duplicative.

WHEREFORE, for the foregoing reasons, plaintiff's motion to strike defendant's affirmative defenses is granted in part and denied in part. Defendant's fifth and seventh affirmative defenses are dismissed without prejudice. Defendant has until January 15, 1997 to amend its pleadings to cure the defects noted above. Plaintiff's motion to dismiss defendant's counterclaim is granted in part and denied in part. Count II of defendant's counterclaim is dismissed with prejudice.