KALUZNY BROTHERS, INC., Plaintiff and Counterdefendant and Appellant and Cross-Appellee, v. MAHONEY GREASE SERVICE, INC., Defendant and Counterplaintiff and Appellee and Cross-Appellant and Third-Party Plaintiff (James Mahoney *et al.*, Defendants and Appellees and Cross-Appellants; Raymond Kaluzny *et al.*, Third-Party Defendants).

Third District   No. 3—87—0260

Opinion filed January 26, 1988.—Rehearing denied March 3, 1988.

Wayne R. Johnson and Kenneth A. Carlson, both of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellant.

McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, and Per K. Hanson and Thomas C. Shanahan, both of Wilmette (Richard T. Buck, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Kaluzny Bros., Inc. (Kaluzny), a corporation engaged in the rendering of animal products, processing grease, and sales of the resulting products, and the defendant, Mahoney Grease Service, Inc., a corporation engaged in the collection and sale of unprocessed grease, entered into a joint venture-partnership agreement (the Agreement). The Agreement was finalized and the parties began operations under the name of Midwest Recycling Co. (Midwest). Contemporaneously, the parties entered into a supply purchase and sale agreement, management agreement and lease agreement. The management agreement stated that the management and control of the business and affairs of the partnership were to be administered by a management committee. The committee consisted of two members of the Kaluzny family and two members of the Mahoney family. The day-to-day supervision and management was delegated to Kaluzny.

Although the Agreement proved to be profitable, the partners began having disagreements, resulting in Kaluzny's filing suit against Mahoney and Mendota Rendering, which is a rendering plant owned by Mahoney. Kaluzny alleges that Mahoney and Mendota, as their alter ego, have breached the joint venture's agreements. Specifically, Kaluzny alleges Mahoney and Mendota have breached the joint venture's covenant not to compete and the fiduciary duty arising out of the joint venture and have tortiously interfered with the joint venture's contract and supply agreement.

Mahoney filed a counterclaim alleging numerous complaints with regard to Kaluzny's noncompliance with the Agreement in reporting,

payment of management fees, and pricing of the inedible grease. Mahoney also filed a third-party complaint against all shareholders of Kaluzny Bros., alleging they had violated the joint venture agreement's covenant not to compete by processing certain inedible grease at Kaluzny's own plant and that they had interfered with the joint venture agreement.

The two cases were consolidated for trial with the liability issue to be tried first, followed by the accounting and damages issues. The trial court issued its initial decision orally and found neither party at fault or in breach of contract commitments. The court further found that the parties, because of past disputes and differences, could not continue as a joint venture and ordered dissolution of the joint venture, which included sale of its assets, and the termination of the joint venture agreement, the supply purchase and sale agreement, management agreement, and except as required by a purchaser of the joint venture business and assets, the termination of the lease agreement. The court also appointed an independent accountant as a court officer to oversee the dissolution of the joint venture and perform other duties.

Prior to the reduction of the oral decision into a written judgment, Kaluzny filed a motion to reopen proofs to submit evidence not before the court due to the separation of the liability and damages issues. Kaluzny sought to submit evidence on the economic impact on Kaluzny by the court's ordering the dissolution and termination of the agreements contrary to their terms. The court denied the motion and issued a formal written judgment.

Kaluzny has appealed. On appeal, Kaluzny contends: (1) that the trial court was incorrect in finding that Mahoney did not breach the joint venture agreement; (2) that the trial court was incorrect in finding that Mahoney Grease and James and John Mahoney did not breach a fiduciary duty owed to Kaluzny; (3) that the Mahoneys should be found liable for tortious interference with the contractual relationship between Kaluzny, Midwest and Mahoney Grease; (4) that the trial court was incorrect in ordering the termination and dissolution of the joint venture agreement; and (5) the trial court's denial of Kaluzny's motion to reopen proofs was an abuse of discretion. Kaluzny's contentions will be addressed in the order they have been presented.

Initially, Kaluzny argues that the trial court's finding that defendant did not breach the joint venture agreement was contrary to the manifest weight of the evidence.

Kaluzny contends the defendants have breached the joint venture

agreement in two ways: (1) that the defendants improperly sold grades of white grease they collected to a competing firm; and (2) that the purchase and operation of a separate grease processing facility constituted a breach of the Agreement's covenant not to compete clause.

The supply purchase and sale agreement entered into between the defendant, the plaintiff, and Midwest does not specifically qualify the type and quality of the grease the defendant was to deliver to the plaintiff. The Agreement provides:

> "That Mahoney shall sell and deliver to the Joint Venture * * * all of the unprocessed inedible grease which it purchased and/or collects at the prices as hereinafter set forth in Paragraph 2 hereof and the Joint Venture shall buy from Mahoney all said unprocessed inedible grease which, when processed, can meet the specifications of the New York Produce Exchange grease standard."

The trial court found that the Agreement called for the defendant to deliver all of the unprocessed inedible yellow grease the defendant collects to the plaintiff. Thus, the court interpreted the Agreement to exclude all forms of white grease. At various times throughout the joint venture, the defendant sold grade B white grease to customers other than Midwest. The plaintiff argues that the evidence indicates the parties agreed to exclude only choice white grease and not grade B white grease and by selling grade B white grease to other customers, the defendant has breached the Agreement.

James Mahoney, an officer and director of the defendant corporation, testified that he understood the Agreement to exclude all forms of white grease. Mr. Mahoney stated that he did not become aware that the defendant was supplying grade B white grease to the joint venture until a number of years after the joint venture was in operation. After he did discover this supplying error, Mahoney demanded that Midwest pay the correct price for the higher quality grease.

Both sides presented evidence concerning their respective interpretation of the Agreement. Although both parties agree there is an exclusion in the contract, the plaintiff's experts testified that the exclusion pertains to choice white grease only and not grade B white grease.

■ ■ A reviewing court will not disturb a trial court's finding and substitute its own unless the trial court's holding is manifestly against the weight of the evidence. (*Ross v. Steiner* (1978), 66 Ill. App. 3d 567, 384 N.E.2d 398.) Examining the record, it is clear that conflicting evidence was presented with regard to the exclusion issue.

Based upon the evidence presented, the trial court could have and did determine that the Agreement applied exclusively to inedible yellow grease. Consequently, the defendant was not breaching the Agreement when selling the grade B white grease to other processors.

Kaluzny's next contention is that Mahoney Grease breached the Agreement by selling yellow grease to National By-Products. The yellow grease sold by the defendant to National By-Products was collected in the Indiana area. The defendant had been servicing the routes for about nine years prior to the joint venture. Upon entering into the joint venture, Mahoney delivered all of the yellow grease collected on the Indiana routes to the joint venture. Subsequently, in early 1981, James Mahoney indicated that he could no longer make a profit bringing the Indiana grease to the joint venture. In an attempt to cure the breach, Mahoney offered to sell the Indiana routes, but Kaluzny objected and sought to hold Mahoney to the Agreement even though the defendant was losing money on the routes. The parties negotiated further and had apparently reached an agreement whereby a solution would be implemented by October 1, 1981. However, the solution was never agreed to and Mahoney ended up selling the yellow grease collected in Indiana to National By-Products.

The trial court found the plaintiff was estopped from asserting the breach because Mahoney had relied upon the representations made by the plaintiff during negotiations concerning a possible solution.

■ In order to invoke the doctrine of promissory estoppel, the promisor should reasonably expect the promise to produce action or forbearance of a substantial character on the part of the promisee, the promise does produce that result, and injustice can be avoided only by enforcement of the promise. *Huggins v. Central National Bank* (1984), 127 Ill. App. 3d 883, 469 N.E.2d 302.

■ The doctrine of estoppel was properly invoked. The record indicates that a solution could have been reached through the negotiation process. The parties were negotiating for over a year. During the negotiations, the defendant proposed a number of solutions, all of which were rejected by Kaluzny. Throughout the negotiations, and thereafter, Mahoney continued to supply the amounts of grease specified in the Agreement. The representations made by Kaluzny in the negotiations that a solution could be reached resulted in Mahoney's continuing to supply the Indiana grease to the joint venture at a financial hardship. The agreement does not stipulate that the defendant was prevented from selling the Indiana routes. Mahoney decided to refrain from selling the routes with the expectation that a solution

could be reached. Consequently, based upon the record, the trial court could have and did determine that the plaintiff should be estopped in asserting that the defendant breached the joint venture agreement.

■ Kaluzny's next contention is that the defendant's purchase, expansion and operation of an animal rendering plant is a violation of the covenant not to compete contained in the joint venture agreement. The Agreement precludes either partner from engaging in "the operation of a grease processing enterprise that is patterned after, or similar to that of the business conducted by the partnership" within a 500-mile radius. The Mahoneys acquired an animal rendering plant toward the end of 1983. A number of pieces of equipment were added to the Mendota operation and the plant began processing various types of products, including grade B white grease.

The trial court found the defendant's operation of the Mendota facility not to be a breach of the Agreement's covenant not to compete. The court stated that because Mendota is primarily in the feed, fats business, they are selling a product which is not in competition with the joint venture. Examining the record, it can be determined that the trial court could have and did determine that Mendota was not in competition with the joint venture. Mendota processed and sold various grades of white grease. However, as mentioned earlier, this court agrees with the trial court's finding that the joint venture agreement applied only to yellow grease. In addition, although both corporations sell their products to similar customers, there is no evidence that Mendota's selling of its products has affected the plaintiff's sales or potential sales.

■ Kaluzny's next contention is that John Mahoney and James Mahoney, as officers of the defendant, Mahoney Grease, are liable for tortious interference with the contractual relationship between the plaintiff, Midwest and Mahoney Grease. Specifically, the plaintiff argues that action allegedly taken intentionally by the Mahoneys concerning the Indiana routes and the acquisition of the Mendota facility result in an improper interference with the parties' joint venture agreement.

As stated earlier, this court is in agreement with the trial court's finding that the Mahoneys' selling of grease in Indiana does not constitute a breach of the joint venture agreement. Further, the operation of the Mendota facility does not amount to improper competition with the joint venture. Consequently, the trial court was correct in finding that the Mahoneys did not tortiously interfere with the contractual relationship between the plaintiff, Midwest and Mahoney Grease.

Kaluzny's next contention is that the trial court was incorrect in ordering the dissolution of the joint venture. Specifically, the plaintiff argues that the order dissolving the partnership was improper because the trial court did not find a specific breach or fault by any of the partners and because the partners had provided for methods of dissolution and liquidation within the joint venture agreement.

With regard to the plaintiff's first argument, the trial court found that both partners were, from the inception of the Agreement, in constant dispute and deadlock. The majority of the disputes were the result of the deadlocked management committee. Although the Kaluznys and Mahoneys each had two members on the committee, the Kaluznys were in charge of the day-to-day management decisions. Consequently, besides submitting each disputed matter to arbitration, the Mahoneys were prevented from contributing in day-to-day management decisions. The record indicates that the trial court could have and did determine that the partners conducted themselves in matters relating to the partnership business for their own self-interest, so that their conduct made it impracticable for either party to carry on business with the other. In making the determination that the business could not continue harmoniously, the trial court referred to section 32(d) of the Illinois Uniform Partnership Act, which allows a court to order dissolution of a partnership when:

> "(d) A partner willfully or persistently commits a breach of the partnership or agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him." (Ill. Rev. Stat. 1985, ch. 106½, par. 32(d).)

The trial court determined that both partners acted in violation of section 32(d) of the Illinois Uniform Partnership Act.

The trial court further found the partners' constant disputes, distrust, noncooperation and mutual conduct were circumstances which rendered a dissolution equitable in accordance with section 32(f) of the Illinois Uniform Partnership Act, which section provides:

> "(f) Other circumstances render a dissolution equitable." Ill. Rev. Stat. 1985, ch. 106½, par. 32(f).

In the instant case, the evidence indicates that the hostility between the partners rendered a dissolution of the Agreement equitable. Although the partnership was profitable, the parties were in constant dispute and deadlock. In addition, while it is correct that the parties did provide an arbitration provision in the Agreement, the disputes between the Kaluznys and the Mahoneys were too numerous for the arbitration provision to be practical.

In dissolving the joint venture, the trial court sought to issue an equitable decision. The court ordered that either party could purchase the partnership assets and continue on individually or the court would oversee a winding up of the partnership and a sale of the assets. Prior to the reduction of the oral decision into a written judgment, Kaluzny filed a motion to reopen proofs to submit evidence not before the court due to the separation of the liability and damages issues. The purpose of this motion was an attempt to illustrate that the partnership should continue, or, in the alternative, the dissolution should be in conjunction with the provisions set forth in the agreement. In addition, the plaintiff sought to illustrate that the trial court's decision would result in a severe economic hardship to Kaluzny. The trial court refused Kaluzny's request to reopen proofs and entered a formal written judgment.

█ In considering a motion to reopen proofs, a trial court should take into account various factors, including the existence of an excuse for the failure to introduce the evidence at trial; whether the adverse party will be surprised or unfairly prejudiced by the new evidence; whether the evidence is of utmost importance to the movant's case; and whether there are the most cogent reasons to deny the request. *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 484 N.E.2d 1237.

█ Analyzing the factors outlined in *Hollembaek*, we find Kaluzny's argument to be without merit. At the start of the proceedings the parties decided to separate the liability and damages issues. Thus, neither the plaintiff nor the defendants had occasion to introduce evidence concerning damages upon dissolution.

In seeking to issue an equitable ruling, the trial court considered all the relevant factors presented. After analyzing the evidence the court ordered the dissolution on the same terms and conditions as that which would have come into effect under the Agreement had the dissolution been by mutual consent of the parties. In addition, Kaluzny was given the first opportunity to purchase the partnership and its assets. Examining the record, it is apparent that the trial court was correct in denying Kaluzny's motion to present evidence concerning the damages issue.

█ With regard to the Mahoneys' cross-appeal against Kaluzny, the trial court found the Mahoneys' counterclaim to be without merit. Specifically, the court found Kaluzny's actions of reporting, payment of management fees and the pricing of inedible grease to comply with the provisions in the Agreement. Further, the court stated that Kaluzny did not violate the Agreement's covenant not to compete clause,

nor did Kaluzny tortiously interfere with the joint venture agreement.

Based upon the evidence presented, it is clear the trial court's rulings concerning the defendant's allegations are correct. The record does not indicate that Mahoney presented any evidence in support of the allegations. Further, the record indicates that the Kaluzny brothers did not breach any fiduciary duty they may have owed to the joint venture.

For the foregoing reasons the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and SCOTT, J., concur.