# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Bradley*, 2013 IL App (5th) 100217

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CHRISTINE BRADLEY, Petitioner-Appellee and Cross-Appellant, and TIMOTHY BRADLEY, Respondent-Appellant and Cross-Appellee. |
| District & No. | Fifth District<br>Docket Nos. 5-10-0217, 5-11-0223 cons. |
| Rule 23 Order filed<br>Modified upon denial of rehearing<br>Motion to publish granted<br>Opinion filed | September 11, 2012<br><br>May 7, 2013<br><br>July 18, 2013<br>July 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the dissolution of the marriage of a nurse and a plastic surgeon, the appellate court held, *inter alia*, that the property distribution was supported by the record and the consideration of the tax consequences of the distribution of the retirement accounts was not an abuse of discretion, and, further, the calculation of the surgeon's net income for purposes of child support was modified to reflect the subtraction of his obligation for the children's health insurance; however, the issue of withholding under the Income Withholding for Support Act was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, Nos. 09-D-285, 09-CH-1255; the Hon. Heinz M. Rudolf, Judge, presiding. |

| | |
|---|---|
| Judgment | Modified in part; vacated and remanded in part with directions; affirmed on all remaining issues. |
| Counsel on Appeal | Curtis L. Blood, of Collinsville, for appellant. |
| | Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellee. |
| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. |
| | Justices Welch and Stewart concurred in the judgment and opinion. |

**OPINION**

¶ 1        Timothy Bradley, respondent in the above-styled dissolution action, appealed the judgment of dissolution entered by the circuit court of St. Clair County resolving numerous and complicated financial issues between himself and petitioner, Christine Bradley. Christine Bradley cross-appealed on various issues. This action has been acrimonious, complicated, and heatedly contested in virtually all aspects. For the reasons stated below, we affirmed the majority of the findings and holdings by the circuit court of St. Clair County, modified one disposition, and reversed and remanded on one disposition.

¶ 2        Subsequently, Timothy Bradley filed a petition for rehearing arguing the circuit court made a $40,000 math error, that our order acknowledged the allegation, but did not consider the effect, if any, of said error, and that the error was significant enough to constitute reversible error. Timothy also alleged error by the circuit court in considering the tax consequences of sale of the parties' assets.

¶ 3        We requested a response from Christine as to the first argument, the math error. Christine argued the math error was given only "cursory treatment," indicating it did not rise to the level of prejudicial error, and that the error did not affect the judgment as a whole.

¶ 4        After examination of the record and consideration of the arguments by the parties, we agree with Christine's position for the reasons stated below in this modified decision and deny Timothy's petition for rehearing.

¶ 5                            FACTS

¶ 6        The parties were married in Portland, Oregon, in 1991, and the marriage produced two children, born in 1992 and 1994. Christine is a nurse who stayed at home with the children in their early years and later worked with Timothy in his medical practice. Timothy is a

plastic surgeon who is the sole shareholder of Aesthetic and Reconstructive Plastic Surgery Institute, S.C., a medical corporation. An entity owned the medical building and an irrevocable trust owned 90% of the entity, with the parties owning the other 10%, the beneficiaries of the trust being Christine and the parties' two daughters. The parties held a promissory note from the entity, LLC, for $210,000. Timothy's medical corporation paid rent to LLC, with any rent exceeding the mortgage payment funding the irrevocable trust.

¶ 7 Timothy's medical practice ran into problems concerning privileges at the two main hospitals in Belleville, Illinois. He was involved in a dispute with Memorial Hospital, which resulted in Memorial revoking his hospital privileges, and Timothy subsequently filed suit. The other major hospital in Belleville, St. Elizabeth's Hospital, later dropped him from its staff. At the end of 2008, Timothy's certification as a board-certified plastic surgeon lapsed because he no longer had full admitting privileges at a joint commission-accredited hospital. His situation essentially was that he was not board-eligible because he did not have full admitting staff privileges at a qualified hospital. He could not be certified until he obtained such hospital privileges. His application for temporary privileges so he could sit for the board-certification examination was denied. He testified that since April of 2010, he has applied at a dozen hospitals but, due to his lack of board certification, his applications were denied. The record reflects that Timothy's suit against Memorial Hospital is inactive due to his failure to pay the attorneys representing him. As of trial, Timothy owed his attorneys in the lawsuit against Memorial Hospital approximately $22,000.

¶ 8 Christine was the office manager of Timothy's practice until April of 2009, essentially handling the day-to-day operations of the facility. Timothy took no active part in such management. The responsibilities assumed by Christine included accounts receivable and accounts payable.

¶ 9 In the period from approximately 1999 to 2000 and beyond, Timothy's practice was in general reconstruction and workers' compensation hand surgery, as well as cosmetic surgery. In 2000, the office was accredited as a surgical facility. When he was dropped from the staff of the hospitals, however, the practice declined, and by the summer of 2008, he saw essentially cosmetic patients.

¶ 10 An exhibit submitted by Christine indicated that the lowest salary for a plastic surgeon was approximately $202,000, with the higher percentile making over $472,000. The remaining employee of the practice testified that prior to 2007, the office saw a substantial amount of workers' compensation and cosmetic surgery patients. Both categories had declined substantially since 2007, and the employee was trying to collect old accounts receivables.

¶ 11 A major issue between the parties centers on the testimony of Dominic Maduri, who for 12 years prior to trial had been the certified public accountant for the parties and for the medical corporation. In his testimony, Maduri indicated his concerns about the financial condition of the practice starting in 2008, including his perception that the practice could not make its retirement contribution for that year and his view that, given the age of the practice's accounts receivables, along with nonapplication of incoming funds to the accounts receivables, the actual value of said accounts was "nominal." Maduri recounted a substantial

decrease of salary payments to both Christine and Timothy in 2009, with Christine receiving $13,250 and Timothy receiving $37,073. He further testified that neither party received a paycheck in 2008. He offered the opinion that it would be hard to cover the medical corporation's debt by selling the assets of the practice.

¶ 12    Maduri customarily did not prepare formal financial statements for Timothy's practice, and the statements presented as to income and expenses were not done in the regular course of business. He testified that he spent approximately 20 hours with Timothy, including trial testimony, with a resultant bill of $2,500. Maduri further testified that he was not supplied original documentation concerning many of the financial aspects of the corporation and "relied on [Timothy] to be honest and forthright." As to salary payments, he testified that Timothy's 2009 W2 showed $113,624.83 as gross compensation. He also testified as to the estimated value of the equipment of Timothy's practice, but did not give a fair market value, only the history of cost depreciation and tax treatment of that equipment.

¶ 13    Christine, after the separation of the parties, was hired by Barnes-Jewish Hospital, in St. Louis, Missouri, making $31.09 per hour, 30 to 40 hours a week, with a net monthly income of approximately $2,956.78. As stated before, Christine is a nurse. Barnes had indicated that in order to advance, Christine needed to obtain a master's degree by taking courses at Southern Illinois University Edwardsville, which would cost $50,000, but might be paid by Barnes Hospital as an employee benefit. The parties have two daughters, described as "two talented, extroverted daughters who excel athletically and academically and are involved in extra-curricular activities." Due to the financial pressures the parties sustained, Christine used money from a daughter's account to stave off foreclosure on the parties' residence. The children's funds were also used to supply a vehicle for Christine so she could get back and forth to work. The vehicle she had driven earlier was sold, with the money applied to the practice's debts.

¶ 14    Christine testified that, except for four years when the children were infants and she stayed home by agreement, she has worked either with Timothy (1999 to 2009) or as a nurse elsewhere. She further testified that she had made geographic moves to further Timothy's career and educational opportunities.

¶ 15    As to the parties' residence, other than paying homeowner's insurance for July 2009, Timothy has not assumed payments on the mortgage, homeowner's insurance, real estate taxes, or utilities. Christine has made payments for car insurance, gasoline, clothes, and groceries, and she provided for the children's needs from her own earnings. She has also covered the children's insurance through her employment. Timothy has taken funds from his IRA for his attorney fees. He failed to pay Christine's life insurance and his coverage of her on health insurance, and he canceled the residence's phone service and alarm service, as well as Christine's cell phone. The residence ultimately went into foreclosure. Timothy has had the services of a number of attorneys and has made some payments to those attorneys from petty cash and an IRA.

¶ 16    The circuit court consolidated a foreclosure action with the trial of this dissolution and received testimony and numerous exhibits as to the financial history and status of the parties and the medical practice. The court entered a finding that it had jurisdiction and a finding as

-4-

to grounds, and it made a number of findings which will be summarized at this point in our disposition and expanded upon in consideration of the parties' issues on appeal. The court noted that Timothy's income was a "complex issue" and ultimately found his net to be $2,069 per month, awarded custody to Christine of the minor children by agreement, and assessed child support of $580 per month (28% of the net). As to the medical practice, the court found that valuation was an area of dispute, noted that it had debts totaling over $66,000, and agreed with Christine's argument that without goodwill, the practice was worth $65,000. The court, in consideration of the accounts receivable and accounts payable and debts of the corporation, determined the net value of the corporation to be $25,000 and awarded that to Timothy. The court found individual retirement accounts and Timothy's profit sharing to be marital property, and after the award of the accounts to each party in their own name, it distributed the profit sharing 75% to Christine and 25% to Timothy. The court further considered in valuation an ordinary income tax rate of approximately 28%. As to the consolidated foreclosure action, a judgment of foreclosure was entered. A $210,000 note from the trust owning the practice's office building was awarded equally to the parties, and the 10% of the plan owned by the parties was awarded to Christine. Timothy was ordered to reimburse Christine for the cost of health insurance for the two minor daughters, $521.28 a month, and half of the cost of uncovered health care. He was further ordered to maintain a $500,000 unencumbered life insurance policy for the benefit of the children.

¶ 17    In considering the lawsuit Timothy had filed against Memorial Hospital, the circuit court had indicated that its value was unknown, reserved jurisdiction over any allocation, and found the $22,354.77 owed to trial counsel for Timothy to be marital debt to be split equally, with any future attorney fees to be the responsibility of Timothy. As to distribution of other debt, Timothy was deemed liable for the debt assigned to the value of his practice and was ordered to reimburse Christine for the daughters' trip to Europe. The cost of the fee for the guardian *ad litem* was to be split 75% Timothy and 25% Christine. Christine argued for maintenance, and Timothy's oral motion to order maintenance for him was denied. The circuit court ordered Timothy to pay Christine $300 a month for three years as rehabilitative maintenance. As to attorney and accountant fees, Timothy was ordered to pay his own attorney fees, the fee to be charged by his accountant, and $12,215 of Christine's attorney fees.

¶ 18    Various posttrial motions were filed, including a posttrial motion/motion to reconsider by Christine and a motion by Timothy to reopen proofs. Said motions were disposed of, including denial of the motion to reopen and an order modifying Timothy's life insurance obligations. Timothy appealed and Christine cross-appealed. This court consolidated both appeals for briefing, argument, and disposition.

¶ 19                                    ANALYSIS

¶ 20    For the sake of clarity, we now consider the issues raised by the appeal and cross-appeal in the manner and form presented to us by the parties. As stated above, we will state further findings of fact and disposition as required to resolve the issues submitted.

¶ 21                                          I

¶ 22     The first issue presented by Timothy is whether the circuit court abused its discretion by disregarding the testimony of the accountant that the accounts receivables of Timothy's medical practice were of "nominal" value and instead determining that they had value. Timothy also alleges that a $40,000 math error was made in the judgment. Christine, in reply, argues credibility, noting that the accountant testified that he had a limited amount of information concerning the medical corporation's financial activities and relied on Timothy for input into his opinion. Christine also notes that the court had numerous exhibits concerning the financial activity of the said corporation. The circuit court in its order noted its consideration of these exhibits and testimony. It stated:

> "Included in the [c]ourt's considerations are the debts alleged by [Timothy] (R.H. Donnelley–$47,649.28; Capital One–$15,595; American Express–$1,356.77; Mike Williams–$1,800); the [a]ccounts [r]eceivables, adjustments to receivables, the collectability of receivables, the account balances, the depreciable assets acquired since 2005, the profit/loss statement, sales summary, patient counts, salaries paid in 2009, transactions by account, expenses per book, summary of transactions since preliminary injunction, [c]orporate [t]ax [r]eturns (2006-2008) and depreciation schedules.
>
>     [Christine] presents to this [c]ourt a credible argument that the service corporation, without goodwill, has a net value of $65,000. [Timothy] presented no valuation evidence."

The court then offset the accounts receivable with the accounts payable and determined the value of the corporation to be $25,000, exclusive of goodwill. This figure consisted primarily of office equipment, supplies, inventory, and various bank accounts. The court reserved consideration of personal goodwill, to be considered in determining the question of Timothy's future income capacity.

¶ 23     Given the consideration given by the court to the exhibits and the factors involved, we conclude that the circuit court did not abuse its discretion or rule contrary to the evidence in arriving at the value of this closely held medical corporation. It was the province of the trial court to weigh the credibility of the witnesses (*In re Marriage of Crook*, 211 Ill. 2d 437, 813 N.E.2d 198 (2004); *Eychaner v. Gross*, 202 Ill. 2d 228, 779 N.E.2d 1115 (2002)), and we will not reweigh the evidence presented. In her brief to this court, Christine argues that the documents prepared by Maduri were not prepared in the ordinary and regular course of business but were prepared with litigation in mind, and she cites to the record indicating Maduri was not furnished with original documentation, did not check receipts to determine the mixture of business and personal payments, relied on Timothy to be forthcoming, and did not do any form of audit of the corporation. We defer to the trial court in assessment of credibility. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 672 N.E.2d 57 (1996); *In re Marriage of Gurda*, 304 Ill. App. 3d 1019, 1025, 711 N.E.2d 339, 343 (1999).

¶ 24     We note that the record reflects testimony by Christine, who served as Timothy's office manager for 10 years, the office manager succeeding Christine, and accountant Maduri. The list of exhibits included an equipment list, a statement of the costs of said equipment, a depreciation schedule, and a depreciation report for the corporation used for tax purposes.

The court also considered tax returns prepared by Maduri. The circuit court's order clearly reflects careful consideration of all of these factors, and we cannot say the court either abused its discretion or ruled contrary to the manifest weight of the evidence.

¶ 25     In the parties' petition for rehearing and response, a particular area is argued as the point where the trial court erred mathematically. After a thorough review of the parties' arguments and the record, we conclude this math error does not undermine the circuit court's judgment.

¶ 26     Timothy argues that a $40,000 error was made in property distribution. Specifically, he notes the court found the value of the Suburban awarded to him was $23,930, the value of the medical corporation awarded to him was $25,000, and the total amount of this award to him was $89,000. Timothy notes a math error of $40,000 and argues, therefore, a significant math error was made requiring reversal, citing *In re Marriage of Zimmerman*, 200 Ill. App. 3d 594, 558 N.E.2d 302 (1990) (math error materially affected apparent court's intended property distribution).

¶ 27     Was the error significant? We think not. The circuit court valued the corporation without goodwill at $65,000, then offset the accounts receivables with the accounts payable, arriving at a valuation of $25,000, exactly $40,000 lower than the figure argued above as error. The focus of our examination, however, is not an easily explainable math error, taking the prior unmodified valuation in computing this award to Timothy, but the apparent intent of the circuit court in its distribution decision. The circuit court intended to award the value of the medical corporation, initial valuation or modified valuation, and whatever level of its financial stress, to Timothy, the party with the appropriate licensing and experience. The court also intended to award him transportation, the Suburban. The $40,000 discrepancy, probably reflecting use of the unmodified valuation, was an error of no practical effect or prejudice to the court's distribution decision and is not sufficient for reversal. The property distribution as a whole is well supported by the record. As noted in Christine's response to the petition for rehearing, the reviewing court may affirm on any basis appearing in the record. See *McDunn v. Williams*, 156 Ill. 2d 288, 620 N.E.2d 385 (1993); *John O. Schofield, Inc. v. Nikkel*, 314 Ill. App. 3d 771, 731 N.E.2d 915 (2000).

¶ 28                                         II

¶ 29     The second issue urged by Timothy is that the circuit court committed error in considering taxes in determining the valuation and distribution of the parties' retirement accounts, citing *In re Marriage of Alexander*, 368 Ill. App. 3d 192, 857 N.E.2d 766 (2006). Christine, in response, argued that the circuit court was mandated to consider those tax consequences pursuant to section 503(d)(12) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d)(12) (West 2010)), specifically requiring the circuit court to consider the "tax consequences of the property division upon the respective economic circumstances of the parties." Christine further argues that the retirement accounts in the instant case were pretax accounts, so the situation in this case is distinguishable from *In re Marriage of Alexander* in that the *Alexander* accounts were investment accounts.

¶ 30     We conclude that the circuit court did not abuse its discretion in considering the tax consequences of its distribution of these retirement accounts. The nature of said accounts

distinguishes the parties' situation from that of the parties in *Alexander*, and we note that the circuit court is obligated by statute to consider the tax consequences of a distribution such as the court made in the instant case. We conclude that the circuit court appropriately followed the mandate of the statute and that its ruling was not an abuse of discretion.

¶ 31                                                                  III

¶ 32        The third issue argued by Timothy on appeal is that the court erred in not subtracting from its finding of net income for purposes of determining child support his obligation, ordered by the circuit court, to pay health insurance payments for the children of the parties. Christine, in opposition, argues that the record reflects Timothy had other avenues of income. Based upon the mandate of the statute, we determine that the circuit court was required to subtract the above-stated insurance obligation and modify the award of child support accordingly.

¶ 33        The circuit court in its order considered Timothy's corporate tax returns to be the most reliable historical data on income and determined his income based on his 2009 W2, personal obligations paid with Timothy's corporate credit card and by corporate check, and the value of the vehicle provided to Timothy. The circuit court also found that while Timothy had devoted substantial time and resources to this dissolution litigation which "unavoidably affected his current income," the court did not make a finding that he was not making a good-faith effort to earn sufficient income. The court further noted that it anticipated Timothy's income would increase and that if this occurred, a petition to increase child support could be filed by Christine. After reviewing various financial statements, the court found Timothy's current monthly net income to be $2,069 and ordered child support in the amount of $580 per month, 28% of that reported net. It also ordered payment of $521.28 per month for the children's health insurance. Timothy argues that pursuant to section 505(a)(4) of the Act (750 ILCS 5/505(a)(4) (West 2010)), the health insurance payment for the children was required to be deducted from the court's finding of net income before a determination of 28% was made. Christine, as stated above, argued that the evidence shows other avenues of income for Timothy. We reiterate that the court found the net figure of $2,069 per month and that arriving at that figure, the circuit court did not subtract the insurance obligation. Accordingly, pursuant to Illinois Supreme Court Rule 366 (eff. Feb. 1, 1994), we reduce the child support obligation of Timothy from $580 per month to $433.36 per month pursuant to statute. While a circuit court may deviate from the percentage of net income noting its findings explicitly under the statute, the circuit court in the instant case determined not to deviate. Accordingly, we modify this finding of the circuit court.

¶ 34                                                                  IV

¶ 35        Timothy's next argument deals with maintenance. He argues that the maintenance award, $300 a month for a period of three years, along with the other obligations that the court ordered him to assume, exceeded his monthly income and, accordingly, constituted an abuse of discretion. Christine, in opposition, argues that the circuit court did not abuse its discretion in that it heard evidence on and applied all of the factors relevant to determination of

maintenance under section 504 of the Act (750 ILCS 5/504 (West 2010)). Christine also argues that, pursuant to section 504 of the Act, the court had to consider factors of the absence of any significant nonmarital properties of the parties, Christine's need to relocate due to foreclosure of the home, her responsibilities as to the parties' two minor daughters, future earnings of Timothy as a plastic surgeon, as opposed to Christine's future earning capacity as a nurse, the time and effort necessary for Christine to advance her professional position by further education, the standard of living established by the parties, the duration of the marriage (approximately 19 years), and the age of the parties (Timothy 49, Christine 45). Section 504(a)(3) of the Act (750 ILCS 5/504(a)(3) (West 2010)) directs the circuit court to consider the present and future earning capacities of the parties, and the circuit court clearly did so in the instant case.

¶ 36    The circuit court in its order indicated that it considered the following factors:

"the income and property of each party, their present and future earning capacity; the time necessary to acquire appropriate education, training, and employment; a party's ability to support herself; the duration of the marriage and the standard of living established during it; the age and physical and emotional conditions of the parties and any other factor the court finds to be just and equitable."

The circuit court further noted that there is an established income disparity between the parties' current and future earning capacities, Christine being a registered nurse and Timothy being a plastic surgeon. The court then concluded that rehabilitative maintenance was appropriate and set the terms of the said maintenance at $300 per month for a period of three years.

¶ 37    We conclude that the circuit court did not abuse its discretion in determining both the question of maintenance and its amount. While explicitly noting that the court had considered the assets and distributions, it further noted that it was considering future earning capacity. The record also reflects Timothy's use of corporate and other assets to pay personal expenses. In the context of the entire case, taking into account all of his sources of income, that the maintenance awarded was rehabilitative for a finite period of time, the distribution of assets to the party, and the future earning capacity of both parties, we are unable to say that the award was an abuse of discretion. In keeping with the legislative intent of rehabilitative maintenance, the circuit court noted:

"[S]aid duration and amount will provide incentive for [Christine] to procure in an expeditious and just manner the additional education, training and skills necessary to attain independence as soon as practicable. *IRMO Carpenter*, 286 Ill. App. 3d 969, 973 (5th Dist. 1997)."

¶ 38                                                    V

¶ 39    The next point of appeal concerns attorney fees. The circuit court, after indicating its consideration of sections 501(c-1), 503(j), and 508 of the Act (750 ILCS 5/501(c-1), 503(j), 508 (West 2010)), considered in detail the question of attorney fees, ultimately awarding $12,215 in favor of Christine and against Timothy for Christine's attorney fees. Timothy alleges an abuse of discretion by the court in this award, considering the other awards which

obligate payment by him and alleging unnecessary litigiousness on the part of Christine. Christine, in response, argues that the circuit court need not make specific findings if the record as a whole provides the basis for the court's judgment. She argues that the court clearly considered all applicable factors in the statute and that the necessity of litigating Timothy's actions was a valid consideration by the court in the allocation of attorney fees.

¶ 40 Initially the circuit court noted that while Christine had, at the time of judgment, paid $3,700 toward her own attorney fees, Timothy had paid approximately $11,315 to his attorneys and had $2,100 remaining, as well as the fee owed to his certified public accountant. The court noted Christine's allocation of fees to various categories, including Timothy's failure to comply with discovery ($3,086.34), Timothy's failures to comply with court orders ($5,582.50), and other fees incurred by Timothy's actions which were above and beyond those fees that should have been necessary to resolve the matter ($4,074.01). The circuit court assessed $2,500 against Timothy as fees attributable to conflicts over discovery and failure to comply with court orders. As to those fees allegedly incurred by Timothy's actions, the court noted that they would be "additional factors considered in the allocation of [Christine's] remaining fees." As to the foreclosure action, the circuit court assessed attorney fees of $1,422.34 against Christine. The total attorney fee judgment entered by the circuit court was $12,215, comprised of $2,500 on the discovery and failure-to-comply matters and $9,715 for other outstanding fees owed. The court also indicated that above and beyond this judgment, Christine would be responsible for any remaining attorney fees.

¶ 41 As stated above, this has been an intensely litigated case. The parties together have raised over a dozen issues on appeal, and the number of contested issues accurately reflects the intensity and bitterness of this litigation. Our review of the record also reflects numerous conflicts over discovery, Timothy's general failure to comply with discovery, and his failure to comply with other court orders. As to alleged litigiousness on the part of Christine, while Timothy further argues that the obligations placed upon him by the circuit court exceed his net income, the court had noted, and we find in the record, numerous instances of Timothy using assets of various accounts, as well as his professional corporation, to pay numerous expenses. Given the factors evident from our review of the record, we cannot say that the assessment of attorney fees against Timothy was an abuse of discretion.

¶ 42                                                    VI

¶ 43 The circuit court heard evidence concerning confrontations between Christine and Timothy, some in the presence of the parties' minor children and some involving the threat of the discharge of firearms by Timothy. In resolving this matter, the circuit court ordered that all of Timothy's firearms be placed in the custody of the sheriff of St. Clair County and that all current firearm owner identification cards belonging to Timothy be held by an attorney until further order of court. Christine's attorney further requested that these firearms be shipped to Pennyslvania, Timothy's home state, and that Timothy not possess a firearm in Illinois until the fall of 2013 when their youngest child commences college. Timothy did not object at trial to this disposition except a disinclination to assume the cost of transporting the weapons. The court ordered Christine to make arrangements for the shipping, ordered

Timothy to cooperate with her and the sheriff's department with regard to any paperwork, and ordered that Christine be responsible for the reasonable costs of this transportation. However, Timothy argues that the circuit court's order as to firearms resulted in a deprivation of his liberty without due process of law, relying upon *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010). Christine, in response, argues that pursuant to section 602 of the Act (750 ILCS 5/602 (West 2010)), the circuit court has a duty to consider the best interests of the children in this type of litigation and that this public policy is further expressed in the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 to 401 (West 2010)). We note in consideration that *Heller* indicates the existence of an area of reasonable regulation of firearms. We consider that the Illinois Domestic Violence Act of 1986 and the Illinois Marriage and Dissolution of Marriage Act constitute a legitimate regulation of Timothy's second amendment rights. In her cross-appeal, Christine argues that the circuit court abused its discretion in ordering her to pay for the shipment of the firearms, citing *In re Marriage of Fryer*, 88 Ill. App. 3d 454, 457, 410 N.E.2d 596, 599 (1980). We disagree that this order constitutes an abuse of discretion. We note that Christine is the custodial parent, that Timothy was the party taking actions with the firearms in this domestic dispute, that initially in front of the circuit court Timothy agreed to the disposition of the weapons, and that the judgment of the circuit court does not leave Christine without the financial capacity to pay for the shipping of the weapons to Timothy's parents in Pennsylvania. We also find, given the failure of Timothy to comply with various court-ordered obligations, that it was not an abuse of discretion for the circuit court to assign the actual execution of its order to Christine rather than Timothy, apparently reflecting the court's assessment that in this manner, the court's order would actually be carried out. As noted in Christine's argument, the paramount obligation of the circuit court is to consider and protect the best interests of the children (750 ILCS 5/602(a) (West 2010)), and we cannot say that the assignment of these duties and expenses to Christine in order to ensure protection of the minor children constitutes an abuse of discretion.

¶ 44                                            VII

¶ 45        Timothy next argues that the circuit court exceeded its authority in ordering Timothy to provide Christine with his and his corporation's tax returns for the next five years, citing *In re Marriage of Best*, 228 Ill. 2d 107, 886 N.E.2d 939 (2008). Christine argues that the court acted within its discretion, noting the statutory obligation of the parties subject to paying support to report new employment (750 ILCS 5/505(h) (West 2010)) and the formula of the Act contemplating percentage award of support (750 ILCS 5/505(a)(5) (West 2010)). In the context of this litigation viewed as a whole, we find that the court's order was not an abuse of its discretion. In light of the entire history of this case, the intense, bitter, and litigious nature of the parties' clash (including problems of enforcement of court orders), and the continuing obligations ordered by the circuit court concerning child support, life insurance, and the payment of maintenance, the circuit court's order was reasonable. We also note that part of the circuit court's consideration in resolving the parties' litigation was consideration of the future earning capacity of both parties, and in light of Timothy's greater future earning

capacity as compared to Christine's, the requirement that these tax returns be supplied to Christine for a period of years is not unreasonable. We also consider that an issue raised by Christine in cross-appeal is the failure of Timothy's medical corporation to honor various court orders, a matter that will be discussed and resolved later in this decision.

¶ 46　　In light of the complexity, intensity, and conflict of this litigation, we do not consider the placement of Timothy under a continuing duty to provide Christine with his personal and corporate tax returns to be an abuse of discretion.

¶ 47　　　　　　　　　　　　　　　　VIII

¶ 48　　A further issue raised by Timothy concerns the use by Christine of various funds, allegedly for her own purposes and, accordingly, an abuse of discretion by the circuit court in making Christine trustee of the minor children's interest in Timothy's life insurance. Both parties used various sources of funding for their own purposes, and the circuit court noted, as to the argument on dissipation, that both parties had refuted the other's charges of dissipation of marital assets. Also, as noted above, Christine was found to have used assets of the children for the purposes of forestalling a foreclosure action of the marital residence where she and the minor children resided and, after turning in a more expensive car and using the proceeds to discharge various debts, purchasing a less expensive automobile with one of the minor children's assets in order to maintain transportation to her employment. In light of both parties' actions and the uses Christine made of her expenditures of the children's assets, we cannot say that the circuit court abused its discretion in retaining her as trustee of the children's interests. Particularly, in the purchase of the automobile in order to maintain her employment, the use of the children's assets was definitely to the benefit of the children.

¶ 49　　　　　　　　　　　　　　　　IX

¶ 50　　Timothy argues as an additional issue on appeal that the circuit court abused its discretion in ordering him to pay the cost of the minor children's health insurance, an obligation noted above, and partial reimbursement of his children's trip to Europe, arguing that there was insufficient evidence of either expense. We have reviewed the record in this case and disagree.

¶ 51　　　　　　　　　　　　　　　　X

¶ 52　　The final issue argued before this court on Timothy's behalf is that the circuit court erred in that, pursuant to *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 950 N.E.2d 1136 (2011), the circuit court improperly refused to consider further evidence before its judgment was final and immortalized in a written order. Christine, in counterargument, argues that this, in effect, was a motion to reopen the proofs in this case and that the movant was required to show a valid reason why the evidence was not previously presented, that the evidence was important, and that reopening the proofs for presentation of further evidence would not be unfair to the party opposing the motion (*Kaluzny Brothers, Inc. v. Mahoney Grease Service,*

-12-

*Inc.*, 165 Ill. App. 3d 390, 518 N.E.2d 1269 (1988)). As one can surmise by the length of this decision, a substantial amount of evidence, both testimonial and by means of exhibit, was presented to the circuit court in consideration of this litigation and presented by both parties, and we cannot say that the circuit court's refusal to reopen in this case was an abuse of discretion.

¶ 53    Three issues are presented to this court by Christine as cross-appellant. One issue, which argues abuse of the trial court's discretion in ordering Christine to pay for the shipment of Timothy's firearms, has previously been addressed. We now address the other two issues on cross-appeal.

¶ 54                                                    XI

¶ 55    Christine argues that the circuit court committed error in its decision not to enforce prior temporary support orders. She argues that the circuit court misplaced reliance on this court's decision in *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 581 N.E.2d 716 (1991). She argues that the circuit court's decision not to enforce the order, its failure to make child support and maintenance retroactive to the date of the first order for temporary relief, and failure either to hold Timothy in contempt for noncompliance or to shift the burden to him to prove that he was unable to pay the amounts ordered, and the failure to assess an arrearage in attorney fees constituted an abuse of discretion. We disagree.

¶ 56    This litigation, as noted numerous times in our disposition, has a long and tortured history. The order of the circuit court includes allocation of parts of Christine's attorney fees to Timothy for his actions, and inactions, concerning discovery and support obligations. It appears, from viewing this litigation as a whole and viewing the entirety of the circuit court's order, that the circuit court determined it was in the best interests of all parties and an exercise in judicial economy to resolve all outstanding issues between the parties. In effect, the circuit court combined all prior arguments of the parties into one final trial and order. In light of the circuit court's global disposition of the matters between the parties and the litigious nature of one of the parties as found by the circuit court, we cannot say that the court's approach was unreasonable or an abuse of discretion.

¶ 57                                                   XII

¶ 58    Christine's final issue on appeal is that the trial court erred in failing to enforce court orders and a notice of withholding filed against Timothy's medical corporation (ARPSI). She argues that Timothy is an employee of ARPSI and that the corporation was properly served pursuant to the Income Withholding for Support Act (750 ILCS 28/1 to 999 (West 2010)). The record fails to indicate any action being taken by the corporation. An amended petition for enforcement was filed by Christine joining ARPSI as a party, and an answer to the petition for enforcement was subsequently filed. She notes that the record indicates a failure to withhold Timothy's income by the corporation and that the Income Withholding for Support Act is mandatory. The circuit court found failure by Timothy and his corporation and based on the withholding requirement ordered him to pay $249.50 in unpaid child support, $3,600 in unpaid maintenance, and $6,255.36 in unpaid health insurance premiums for the

children. The record indicates that nothing was withheld by the corporation and nothing was paid. Christine argues that due to this lack of action, the circuit court erred in refusing to enter a judgment against ARPSI, assess penalties pursuant to section 35 of the Income Withholding for Support Act (750 ILCS 28/35 (West 2010)), and assess incidental attorney fees. It appears, from our consideration of this issue, that the assessment of a judgment against the payor, ARPSI, is mandatory. See 750 ILCS 28/35 (West 2010); see also *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 652 N.E.2d 438 (1995); *In re Marriage of Chen*, 354 Ill. App. 3d 1004, 820 N.E.2d 1136 (2004). Accordingly, we vacate any order or a part of any order entered by the circuit court that may be construed to refuse Christine's request for enforcement and remand this issue of the dissolution action to the circuit court for further actions consistent with the statute and this decision.

¶ 59        This litigation has been complicated and contentious to say the least. We commend the attorneys for both parties for their thorough briefing and presentation of the many issues presented to this court. We also commend the trial court judge for his patient and thorough consideration of the parties' many positions and the excellent, clear, and concisely stated order that he filed disposing of the issues in this litigation. We especially urge both parties in this cause, despite the obvious intensity of this litigation and the breakdown of their relationship, to reach some form of accommodation and cooperation for the benefit of their minor daughters.

¶ 60        For the reasons stated above, we modify and enter judgment on the issue of child support, vacate and remand for further proceedings the issue of withholding under the Income Withholding for Support Act, and in all other respects affirm the judgment of the circuit court of St. Clair County.

¶ 61        Modified in part; vacated and remanded in part with directions; affirmed on all remaining issues.